## LAWRENCE DONAHUE *v.* STATE OF CONNECTICUT (10283)

LANDAU, HEIMAN and FREEDMAN, Js.

Argued January 14—decision released March 24, 1992

*Arnold J. Bai,* with whom was *Andrew S. Turret,* for the appellant (defendant).

*Frank J. Forgione,* with whom, on the brief, was *Robert T. Harrington,* for the appellee (plaintiff).

HEIMAN, J. The defendant appeals from the trial court's judgment setting aside a verdict awarding the plaintiff $866 in damages. The trial court, after concluding that the award was inadequate, ordered that the verdict be set aside and a new trial conducted on the issue of damages unless the defendant filed an additur of $10,634. See General Statutes § 52-228b.[1] After the time limited by the court for filing the additur expired, the plaintiff successfully moved to set the verdict aside and for a new trial limited to the issue of damages. This appeal followed.

The defendant claims that the trial court improperly set the verdict aside and ordered a new trial. It further claims that even if the trial court properly set the

[1] General Statutes § 52-228b provides in pertinent part: "No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of the court. . . . No such verdict may be set aside solely on the ground that the damages are inadequate until the parties have first been given an opportunity to accept an addition to the verdict of such amount as the court deems reasonable."

verdict aside, it improperly limited the retrial to the issue of damages. Because we conclude that the trial court improperly set the verdict aside, we need not address whether it properly limited the scope of the retrial.

In reviewing the trial court's action in setting a verdict aside, we examine the evidential basis of the verdict itself to determine whether the trial court abused its discretion. *Jacobs* v. *Goodspeed,* 180 Conn. 415, 417, 429 A.2d 915 (1980). At trial, the plaintiff offered evidence to support the following. At approximately 9 a.m. on February 23, 1987, the plaintiff, Lawrence Donahue, was driving north on Main Street in Glastonbury, near the intersection with South Mill Drive. Snow was falling and Main Street, although plowed, was slushy. Marvin Brion, an employee of the defendant state of Connecticut, was driving south on Main Street near the same intersection in a vehicle owned by the defendant. As the cars neared one another, the defendant's vehicle spun across the center line of the highway and collided with the left side of the plaintiff's vehicle. After the plaintiff's vehicle came to rest in a snowbank, the plaintiff emerged and directed traffic until Officer Wayne Martin of the Glastonbury police department arrived at the scene. After Martin arrived, the plaintiff returned to his car and pulled a fender, which had been bent as a result of the accident, from one of the car's tires. After Martin finished his investigation of the accident, the plaintiff drove his car to work.

After working only a portion of the day, the plaintiff began to experience pain and numbness and returned home. Later that evening, the plaintiff's wife drove him to the emergency room at Yale-New Haven Hospital. At the emergency room, the plaintiff complained of numbness in the fourth and fifth fingers of his left hand and pain in his neck and left shoulder. He described the pain as similar to pain that he developed

after falling from an eighteen foot platform in 1969. An X-ray of the cervical spine revealed degenerative changes but no fracture. After receiving a cervical collar and pain medication, the plaintiff was discharged from the emergency room. He returned to the emergency room on March 6, 1987, for additional X-rays. About a month after the accident, the plaintiff consulted Hubert Bradburn, an orthopedic surgeon, who diagnosed his condition as a sprain-type injury to the cervical spine.

The plaintiff further claimed that the medical bills generated by the treatment he received for the injuries he sustained in the automobile accident approximated $1700. As a result of the accident, he suffered a 5 percent partial permanent disability of the cervical spine and continued to suffer pain in his neck, back and left arm. The plaintiff offered no evidence of lost wages.

The defendant produced evidence that the plaintiff's 1969 fall had occurred as he was standing on an eighteen foot high platform cutting overhead power lines. As the plaintiff attempted to loosen a turnbuckle, he was knocked off the platform and fell to the ground, breaking his lower back and his right wrist and chipping his left elbow. As a result of the fall, he suffered a 15 percent permanent disability to his back. Although Bradburn treated the plaintiff for the injuries he sustained in 1969, Bradburn had no records of the treatment as of the trial date and testified from memory. At the time of the trial of this case, the plaintiff continued to suffer back pain from the 1969 accident.

The defendant also produced evidence that the symptoms that the plaintiff complained about after the 1987 accident were consistent with osteoarthritis, a degenerative joint disease commonly associated with the aging

process. X-rays taken after the automobile accident indicated that the plaintiff suffered from preexisting osteoarthritis.

At the trial's conclusion, the jury returned a verdict awarding the plaintiff $866. On April 17, 1991, the plaintiff filed a motion for additur asking the trial court to increase the damages award "to a sum deemed by the court to be fair, just and reasonable in light of all of the evidence presented at trial." It also filed a motion requesting the trial court to set the verdict aside and to order a retrial limited to the issue of damages. The defendant objected to both motions. On May 13, 1991, the trial court filed its memorandum of decision, stating that the amount of the verdict "shocks the conscience of the court and leads the court to the conclusion that the jury failed to follow its instructions as to the elements of damage which they were to consider. Moreover, the verdict rendered appears to be the result of bias and prejudice and is manifestly inadequate." The trial court then ordered an additur of $10,634, which, if accepted, would have raised the amount of the award to $11,500. It further ordered that if the defendant did not file the additur within two weeks, a new trial limited to the issue of damages would be conducted. When the defendant failed to file an additur within the two week period, the trial court granted the plaintiff's motion to set the verdict aside and ordered the case returned to the jury trial list.

"A court should be especially hesitant to set aside a jury's award of damages." *Shaham* v. *Capparelli*, 23 Conn. App. 468, 478, 581 A.2d 1065 (1990). The trial court's decision to set a verdict aside, however, involves the exercise of a broad legal discretion. *O'Brien* v. *Seyer*, 183 Conn. 199, 208, 439 A.2d 292 (1981). The trial judge "had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evi-

dence." *Palomba* v. *Gray,* 208 Conn. 21, 24–25, 543 A.2d 1331 (1988). The trial judge also had the opportunity to "gauge the tenor of the trial, as we, on the written record, cannot, and can detect those factors, if any, that could improperly have influenced the jury. . . ." Id., 25. As a result, we afford the trial court's ruling in setting aside the verdict great deference and indulge every reasonable presumption in favor of its correctness. Id., 24. We will disturb the trial court's decision only if we conclude that the trial court abused its broad discretion. *Labatt* v. *Grunewald,* 182 Conn. 236, 240, 438 A.2d 85 (1980).

We are also mindful of the unavoidable tension between our deferential standard of appellate review and the litigants' constitutional rights to have issues of fact resolved by a jury. See *Palomba* v. *Gray,* supra, 25; *Geryk* v. *Atlantic Richfield Co.,* 19 Conn. App. 585, 586, 563 A.2d 324, cert. denied, 212 Conn. 820, 565 A.2d 539 (1989). "The right to a jury trial is fundamental in our judicial system, and . . . the right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded [persons] passed upon by the jury and not by the court." *Camp* v. *Booth,* 160 Conn. 10, 13, 273 A.2d 714 (1970).

Because by setting the verdict aside the trial court infringed on the parties' rights to have factual issues resolved by a jury, we examine the evidential basis of the verdict itself to determine whether the trial court abused its discretion. *Jacobs* v. *Goodspeed,* supra; see also *Palomba* v. *Gray,* supra. "In reviewing the evidence . . . we must give it the most favorable construction in support of the verdict of which it is reasonably capable." *Healy* v. *White,* 173 Conn. 438, 442, 378 A.2d 540 (1977). Where, as here, the suffi-

ciency of the damages award is at issue, we seek to determine whether the award fell within the "necessarily uncertain limits of fair and reasonable compensation in the particular case . . . ." *Zarrelli* v. *Barnum Festival Society, Inc.,* 6 Conn. App. 322, 327, 505 A.2d 25, cert. denied, 200 Conn. 801, 509 A.2d 516 (1986). If the verdict "so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake or corruption," we must affirm the trial court's ruling setting the verdict aside. Id. Here, because the jury's award fell squarely within the "necessarily uncertain limits of fair and reasonable compensation"; id.; the trial court should not have set the verdict aside.

The evidence regarding the damages attributable to the car accident was dubious. Bradburn testified that the plaintiff suffered a sprain-type injury that resulted in a 5 percent permanent partial disability to the cervical spine. He also testified, however, that the plaintiff suffered a fall in 1969 that resulted in a broken back, a broken right wrist, a chipped left elbow and a 15 percent permanent disability of the back. He produced no records to substantiate either the 1969 injuries or his treatment of them. He also testified that X-rays taken after the automobile accident revealed osteoarthritis in the plaintiff's neck which could produce symptoms similar to those about which the plaintiff complained after the car accident. The plaintiff himself testified that he still suffered pain as a result of the fall. He further testified that he returned to work two days after the car accident, and except for two visits to the hospital emergency room, he did not consult a physician until about one month after the car accident.

The amount of damages that a plaintiff is entitled to receive is based on his ability to establish a causal relationship between his injuries and the physical condition that he claims resulted from the accident. *Bud-*

*ney* v. *Zalot,* 168 Conn. 388, 362 A.2d 861 (1975). This connection must rest on more than surmise and conjecture. Id. Further, the jury is the arbiter of the credibility of witnesses. *Dulski* v. *Appel,* 172 Conn. 187, 191, 374 A.2d 177 (1976). It is not obliged to accept the opinions of expert witnesses and may reject those opinions on the ground that they were based on subordinate facts that were not proven. *Vetre* v. *Keene,* 181 Conn. 136, 140, 434 A.2d 327 (1980). Here, the jury could reasonably have concluded that the plaintiff had not proven that his injuries and corresponding medical treatment were not attributable in part to the 1969 fall and the preexisting osteoarthritis, and apportioned its damages award accordingly.

Our review of the evidence convinces us that the trial court's interference with the parties' constitutional rights to have the issues of fact resolved by the jury was unjustified; see *Jacobs* v. *Goodspeed,* supra; and that the trial court abused its discretion in setting the verdict aside.

The judgment is reversed and the case is remanded with direction to render judgment on the verdict.

In this opinion the other judges concurred.