GARY PURZYCKI ET AL. *v.* TOWN OF
FAIRFIELD ET AL.
(15166)

O'Connell, Heiman and Spear, Js.

Argued December 3, 1996—officially released February 25, 1997

*Theodore R. Tyma,* for the appellants (plaintiffs).

*Tracey C. Kammerer,* with whom were *Thomas J. Walsh, Jr.,* and, on the brief, *Matthew M. Hausman,* and for the appellees (defendants).

SPEAR, J. The plaintiffs[1] appeal from the judgment notwithstanding the verdict rendered by the trial court after it granted the defendants'[2] motion to set aside the verdict. The plaintiffs claim that the trial court improperly determined that they failed to establish the imminent harm aspect of the identifiable person-imminent harm exception to the defendants' qualified governmental immunity. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The plaintiff Jason Purzycki was an eight year old second grade student at Roger Sherman School in Fairfield. School rules required that teachers escort

---

[1] Jason Purzycki and his father, Gary Purzycki, are the plaintiffs in this case.

[2] The defendants on appeal are Joseph Walsh, principal of Roger Sherman School, and the Fairfield board of education. The town of Fairfield was originally a defendant, but the plaintiffs withdrew their claim against the town prior to trial. We refer in this opinion to Walsh and the board of education as the defendants.

students to an all-purpose room, which served as a cafeteria during lunchtime. While eating lunch, the students were supervised by two adults. After eating lunch, the students were dismissed on a table by table basis to go to the playground for recess. To get to the playground from the lunch room, the students proceeded down a hallway. The hallway was not monitored, but teachers in the classrooms abutting the hallway were instructed to keep their doors open in order to hear or see any activity in the hallway. This process was in accordance with the policies, rules and regulations promulgated by school officials.

On June 13, 1989, at approximately 12:30 p.m., Jason, along with the rest of his class, was escorted to lunch by a teacher. After being dismissed for recess, Jason proceeded to his locker, where he removed his coat and hat. He then ran down the hallway, and, as he neared the exit door, another student extended his leg and tripped him. Jason fell, head first, through the wire mesh window of the exit door and sustained injuries.

The relevant procedural history is as follows. The plaintiffs filed a personal injury action against the defendants, sounding in negligence and nuisance.[3] The defendants alleged as a special defense that they were shielded from liability pursuant to the doctrine of qualified governmental immunity. After a trial, the jury rendered a verdict in favor of the plaintiffs. In answers to special interrogatories, the jury stated that the defendants were 60 percent negligent, the plaintiff Jason Purzycki was 40 percent negligent and the defendants' negligence subjected Jason to imminent harm. The defendants moved to set aside the jury verdict, asserting that the plaintiffs failed to prove their claim that the imminent harm exception to the qualified governmental immunity doctrine applied to this case. The trial court

---

[3] The plaintiffs withdrew their claim for nuisance prior to trial.

granted the defendants' motion and rendered judgment notwithstanding the verdict. This appeal followed.

A trial court may set aside a jury verdict if the court finds the verdict to be against the law or the evidence. *Caciopoli* v. *Acampora*, 30 Conn. App. 327, 331, 620 A.2d 191 (1993). The trial court's decision to set aside a jury verdict will not be reversed on appeal unless the trial court abused its discretion. *Davis* v. *Druks*, 43 Conn. App. 453, 454, 683 A.2d 745 (1996). "While the trial court has broad discretion to set aside verdicts, it should be mindful that [l]itigants have a constitutional right to have factual issues resolved by the jury." (Internal quotation marks omitted.) *Caciopoli* v. *Acampora*, supra, 331, quoting *Berry* v. *Loiseau*, 223 Conn. 786, 807, 614 A.2d 414 (1992); *Donahue* v. *State*, 27 Conn. App. 135, 140, 604 A.2d 1331 (1992). "Every reasonable presumption should be indulged in favor of the correctness of the trial court's decision to set aside the verdict because a trial court is in a better position than an appellate court to determine whether a jury's verdict was improperly influenced." *Caciopoli* v. *Acampora*, supra, 330. " '[T]he role of the trial court on a motion to set aside the jury's verdict is not to sit as a seventh juror, but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did.' " Id., 332.

With this standard of review in mind, we turn now to the law concerning municipal immunity. " 'The doctrines that determine the tort liability of municipal employees are well established. Although municipalities are generally immune from liability in tort, municipal employees historically were personally liable for their own tortious conduct. . . .' " (Citations omitted.) *Beach* v. *Regional School District Number 13*, 42 Conn. App. 542, 553, 682 A.2d 118 (1996). Municipal employees now have qualified immunity in the performance of

governmental duties, but may be liable if they misperform a ministerial act, as opposed to a discretionary act. Id. Ministerial duties are those that can "be performed in a prescribed manner without the exercise of judgment or discretion. . . ." (Citations omitted; internal quotation marks omitted.) *Evon* v. *Andrews*, 211 Conn. 501, 505, 559 A.2d 1131 (1989).

The plaintiffs concede that any duty owed was discretionary in nature. For the plaintiffs to succeed on their claim, the case must fit within one of the following exceptions: "first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." (Citations omitted.) Id.

The identifiable person-imminent harm exception is the only one relevant to this case. Our courts have recognized that this exception includes not only identifiable individuals, but also includes narrowly defined classes of foreseeable victims. See *Burns* v. *Board of Education*, 228 Conn. 640, 646, 638 A.2d 1 (1994); *Sestito* v. *Groton*, 178 Conn. 520, 527–28, 423 A.2d 165 (1979). The defendants do not claim that Jason is not a member of a narrowly defined class of foreseeable victims or that the harm was not foreseeable. Rather, they claim that the trial court properly granted their motion to set aside the verdict because, on the basis of the evidence adduced at trial, the jury could not have reasonably concluded that the lack of supervision subjected Jason to imminent harm.

We agree with the trial court that "there was no evidence that [Jason], in traveling the brief distance

from the 'all-purpose' room to the playground, was in imminent harm. True, the principal knew that if children were not watched they might run in the hall, and that if they ran in the hall, they could get hurt. But to regard this as imminent harm would be to equate that term with mere foreseeability, and to thereby transfer the governance of elementary schools . . . from the principal's office . . . to the [courtroom] . . . . "

The plaintiffs argue that this case is analogous to *Burns* v. *Board of Education*, supra, 228 Conn. 646. Burns, a high school student, incurred injuries when he slipped and fell on a patch of ice located in the school courtyard. He filed an action against the superintendent, the board of education and the principal, alleging that the defendants were negligent in failing to salt and sand the courtyard properly. The defendants claimed governmental immunity as a special defense. The plaintiff claimed that he was a member of a foreseeable class of victims, and entitled to the benefit of an exception to the doctrine of immunity. Our Supreme Court held that a defendant "bears the responsibility for failing to act to prevent the risk of *imminent harm* to school children as an identifiable class . . . ." (Emphasis added.) Id., 649. Furthermore, the court found that there was a risk of imminent harm: "Unlike the incident in *Evon* v. *Andrews*, supra, 211 Conn. 501, this accident could not have occurred at any time in the future; rather, the danger was limited to the duration of the *temporary* icy condition in this particularly 'treacherous' area of the campus." (Emphasis added.) *Burns* v. *Board of Education*, supra, 650.

We conclude that this case is analogous to *Evon* v. *Andrews*, supra, 211 Conn. 508. In *Evon*, a decedent's administratrix alleged that the city of Waterbury and various city officials were negligent in failing to inspect the decedent's dwelling reasonably, properly and adequately and, as a result of such negligence, failed

to prevent the occurrence of a fire. The defendants claimed that they were shielded from liability pursuant to the doctrine of governmental immunity. In holding that the identifiable person-imminent harm exception did not apply, our Supreme Court concluded that "[t]he risk of fire implicates a wide range of factors that can occur, if at all, at some unspecified time in the future. . . . [T]he plaintiffs' decedents were not subject to 'imminent harm.' This is clearly not the situation in which a police officer stood by and watched a public brawl that resulted in a person being shot. See *Sestito* v. *Groton,* supra, [178 Conn. 528]. The present allegations do not even rise to the level of the imminence we rejected in *Shore* v. *Stonington,* [187 Conn. 147, 444 A.2d 1377 (1982)], in which a police officer permitted a drunk driver to continue on his way, resulting in the death of the plaintiff's decedent. In the present instance, the fire could have occurred at any future time or not at all. We cannot accept the proposition that the plaintiffs' decedents in this case were . . . subject to imminent harm. As we observed in *Shore* v. *Stonington,* supra, 157, '[t]he adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society.' " *Evon* v. *Andrews,* supra, 508.

The plaintiffs argue that imminent harm was proved because Jason was compelled by statute to attend school and the risk of harm was limited to the one-half hour lunch recess every school day. Jason, however, could have been injured at any time in the future while traveling from lunch to recess, or not at all. In fact, the record contains uncontroverted evidence that in the twenty-two years prior to Jason's injury, students using the hallway to go to recess were unsupervised and no other injuries had occurred. Unlike *Burns,* where the icy condition alone created a risk of imminent harm, the lack of supervision claimed here, standing alone,

did not create such risk. A combination of the lack of supervision, Jason's own conduct and the conduct of another student caused the injuries. While it may have been foreseeable that Jason might run in the hallway, any risk of harm that did exist required a confluence of events and did not rise to the level of imminence necessary to overcome the defendants' immunity. Accordingly, we conclude that the jury could not reasonably have found that Jason was subjected to a risk of imminent harm.

The judgment is affirmed.

In this opinion O'CONNELL, J., concurred.

HEIMAN, J., dissenting. The majority concludes that the jury could not reasonably have found that the minor plaintiff was subjected to a risk of imminent harm. Accordingly, it affirms the trial court's decision to grant the defendants' motion to set aside the verdict and to render judgment notwithstanding the verdict. I believe that the result reached by the majority is incorrect, and, thus, I respectfully dissent.

Our Supreme Court has repeatedly held that the resolution of the question of the existence of imminent harm is a factual issue for the jury to determine. See *Evon* v. *Andrews*, 211 Conn. 501, 507, 559 A.2d 1131 (1989); *Shore* v. *Stonington*, 187 Conn. 147, 153, 444 A.2d 1379 (1982); *Sestito* v. *Groton*, 178 Conn. 520, 528–29, 423 A.2d 165 (1979). "[T]he constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded [persons] passed upon by the jury and not by the court." *State* v. *Wooten*, 227 Conn. 677, 696, 631 A.2d 271 (1993). " 'Thus, the role of the trial court on a motion to set aside the jury's verdict is not to sit as a seventh juror, but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached

the verdict that it did." *Caciopoli* v. *Acampora*, 30 Conn. App. 327, 332, 620 A.2d 191 (1993).

Contrary to the majority, I believe that, on the basis of the evidence presented at trial, the jury *could* reasonably have found that Jason was subjected to a risk of imminent harm. At trial, the principal of the elementary school admitted that if elementary schoolchildren are not supervised, they tend to run and engage in horseplay that often results in injuries. Children on their way to recess are often especially excited and in a hurry to get out to play and are thus even more likely to run, to engage in horseplay and ultimately to be injured. At trial, the principal acknowledged that because of these natural tendencies of young children, his elementary schoolchildren are supervised for almost the entire time that they are on school grounds. The children are supervised while at recess, while eating lunch, and are even teacher escorted when traveling from classroom to classroom or from classroom to recess.

In the face of this, the principal admitted that when his elementary schoolchildren left the lunch room and traveled to recess, excited and in a hurry, they were not directly supervised as they were at other critical times.[1] "In considering the evidence introduced in a case, [j]uries are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their

---

[1] The principal testified that abutting the hallway at issue were classrooms in which teachers were teaching. The principal explained that the teachers in these classrooms were instructed to leave their classroom doors open in order to be able to be of assistance if there was a problem in the hallway. It seems clear, however, that a jury could reasonably find that teachers busy teaching in their own classrooms can hardly be considered to be adequately monitoring an adjacent hallway.

conclusions correct." (Internal quotation marks omitted.) *State* v. *Cintron*, 39 Conn. App. 110, 119, 665 A.2d 95 (1995). Therefore, I conclude that here the issue of imminent harm presented an issue of fact as to which there was room for a reasonable difference of opinion among fair-minded persons, and thus the jury could have reasonably concluded that Jason was subjected to a risk of imminent harm.

Moreover, recent case law supports the jury's conclusion that Jason was subjected to a risk of imminent harm. Contrary to the majority's opinion, I believe that this case is controlled by *Burns* v. *Board of Education*, 228 Conn. 640, 646, 638 A.2d 1 (1994), not *Evon* v. *Andrews*, supra, 211 Conn. 501. In *Evon*, a decedent's administratrix alleged that the city of Waterbury was negligent in failing to reasonably inspect a multifamily rental unit in which the decedent was living and, as a result of such negligence, failed to prevent the occurrence of a fire. In *Evon*, the Supreme Court concluded that, "[t]he class of possible victims of an unspecified fire that may occur at some unspecified time in the future is by no means a group of 'identifiable persons.' " *Evon* v. *Andrews*, supra, 508. In *Burns*, however, as here, the plaintiff fell "during school hours, while the child was compelled by statute to be on those school grounds." *Burns* v. *Board of Education*, supra, 650. Thus, the plaintiff in *Burns*, like the minor plaintiff here, "was one of a class of foreseeable victims" to whom the school principal and the board of education owed a duty of protection from dangers that may reasonably be anticipated. Id.

The majority concludes that this case is controlled by *Evon*, not *Burns*, because the accident here could have occurred at any time in the future, or not at all, and thus the danger in this case was not limited or temporary in duration. I disagree.

In my opinion, the risk of injury at issue here is similar to the risk of injury that our Supreme Court found to constitute "imminent harm" in *Burns*. In *Burns*, icy conditions "in this particularly 'treacherous' area of the campus" existed for temporary periods of time every winter. *Burns* v. *Board of Education*, supra, 228 Conn. 649. Here, the lack of supervision of the hallway between the lunch room and the outside playground occurred every school day during that particularly treacherous half hour when the young children were hurriedly and excitedly trying to get out to recess. Thus, the threat of injury here was just as "limited" and "temporary" as was the threat of injury in *Burns*. Further, the potential for harm from a fall on ice and the potential for harm from unsupervised second graders hurriedly and excitedly running out to recess are equally significant and foreseeable. See id.

The majority further distinguishes this case from *Burns* by concluding that in *Burns*, the risk of imminent harm was created by the icy condition alone, while here, the risk of harm was created by a combination of the lack of supervision, Jason's own conduct and the conduct of another student, and thus did not rise to the level of exposure to imminent harm. I disagree.

In *Burns*, the icy condition alone did not create the risk of imminent harm. The plaintiff in *Burns* slipped and fell because (1) there was ice, (2) the head custodian failed to salt and sand that area of the campus, and (3) the student chose to walk in that particularly treacherous area of the school when the conditions were icy. Thus, both here and in *Burns*, the risk of imminent harm required a confluence of events.

Therefore, viewing the evidence in the light most favorable to the plaintiffs, I conclude that the jury reasonably could have found that the lack of supervision

subjected Jason to a risk of imminent harm.[2] I would reverse the judgment and remand this case with direction to deny the defendants' motion to set aside the verdict and to render judgment on the jury verdict.

---

[2] Inherent in the majority opinion is the implication that if we allowed the jury to find that the failure to supervise a hallway where young children hurriedly traveled from lunch to recess created a risk of imminent harm, we will have transferred the governance of elementary schools from the principal's office to the courtroom and thereby crimped the exercise of official discretion beyond the limits desirable in our society. I disagree.

As our Supreme Court reiterated in *Burns*, our case law has consistently recognized that, "children require special consideration when dangerous conditions are involved." *Burns* v. *Board of Education*, supra, 228 Conn. 650. Moreover, "during school hours on school days, when parents are statutorily compelled to relinquish protective custody of their children to a school board and its employees, the superintendent has the duty to protect the pupils in the board's custody from dangers that may reasonably be anticipated." Id., 649.