### GARY PURZYCKI ET AL. *v.* TOWN OF FAIRFIELD ET AL.
### (SC 15668)

Callahan, C. J., and Borden, Berdon, Katz and Palmer, Js.

---

Argued December 11, 1997—officially released March 17, 1998

*Theodore R. Tyma,* for the appellants (plaintiffs).

*Tracey C. Kammerer*, with whom, on the brief, were *Matthew M. Hausman* and *Thomas J. Walsh, Jr.*, for the appellees (defendant Joseph Walsh et al.).

*Mary-Michelle U. Hirschoff* filed a brief for the Connecticut Conference of Municipalities et al. as amici curiae.

*Opinion*

BORDEN, J. The sole issue in this certified appeal is whether the plaintiffs failed to prove that the plaintiff Jason Purzycki (child) was subject to imminent harm, so as to come within an applicable exception to the doctrine of governmental immunity for discretionary acts performed by municipal employees. The named plaintiff, Gary Purzycki, filed this action as parent and next friend of the child, and on his own behalf for his medical expenses, against the defendants[1] for injuries that the child had sustained when he was tripped by another student in a school hallway and suffered facial lacerations. The plaintiffs appeal from the judgment of the Appellate Court affirming the judgment of the trial court, which granted the defendants' motion to set aside the jury verdict for the plaintiffs. The plaintiffs claim that there was sufficient evidence for the jury to have found that the imminent harm exception to governmental immunity applied. The defendants contend that the plaintiffs failed to produce sufficient evidence to prove that governmental immunity did not apply.[2] We agree

---

[1] The plaintiffs brought an action against the town of Fairfield, Joseph Walsh, the principal of Roger Sherman School, and the Fairfield board of education. The plaintiffs withdrew their claim against the town prior to trial. Hereinafter, we refer to Walsh and the board of education as the defendants.

[2] The defendants also offer four alternate grounds for affirming the judgment of the Appellate Court in the event that we conclude that there was sufficient evidence to support the jury's verdict. They claim: (1) the doctrine of sovereign immunity bars the plaintiffs' claim; (2) the jury reasonably could not have found that the defendants' negligence was an actual or proximate cause of the child's injuries; (3) there was insufficient evidence for the jury to have found a duty to supervise or a breach of such a duty;

with the plaintiffs and, accordingly, we reverse the judgment of the Appellate Court.

The Appellate Court decision sets forth the procedural history, and the facts that the jury reasonably could have found. "The [child] was an eight year old second grade student at the Roger Sherman School in Fairfield. School rules required that teachers escort students to an all-purpose room, which served as a cafeteria during lunchtime. While eating lunch, the students were supervised by two adults. After eating lunch, the students were dismissed on a table by table basis to go to the playground for recess. To get to the playground from the lunchroom, the students proceeded down a hallway. The hallway was not monitored, but teachers in the classrooms abutting the hallway were instructed to keep their doors open in order to hear or see any activity in the hallway. This process was in accordance with the policies, rules and regulations promulgated by school officials.

"On June 13, 1989, at approximately 12:30 p.m., [the child], along with the rest of his class, was escorted to lunch by a teacher. After being dismissed for recess, [he] proceeded to his locker, where he removed his coat and hat. He then ran down the hallway, and, as he neared the exit door, another student extended his leg and tripped him. [The child] fell, head first, through the wire mesh window of the exit door and sustained injuries.

"The relevant procedural history is as follows. The plaintiffs filed a personal injury action against the defendants, sounding in negligence and nuisance.[3] The defen-

and (4) the defendants stood in loco parentis to the child and are thereby granted parental immunity. We discuss these claims in part II of this opinion.

[3] The plaintiffs withdrew their claim for nuisance prior to trial.

dants alleged as a special defense that they were shielded from liability pursuant to the doctrine of qualified governmental immunity. After a trial, the jury rendered a verdict in favor of the plaintiffs. In answers to special interrogatories, the jury stated that the defendants were 60 percent negligent, the [child] was 40 percent negligent and the defendants' negligence subjected [him] to imminent harm. The defendants moved to set aside the jury verdict, asserting that the plaintiffs failed to prove their claim that the imminent harm exception to the qualified governmental immunity doctrine applied to this case. The trial court granted the defendants' motion and rendered judgment notwithstanding the verdict." *Purzycki* v. *Fairfield*, 44 Conn. App. 359, 360–62, 689 A.2d 504 (1997).

The Appellate Court was divided, with the majority deciding that the jury reasonably could not have concluded that the lack of supervision, standing alone, subjected the child to imminent harm as required for liability under the doctrine of qualified governmental immunity. Id., 365–66. It concluded that the case was analogous to *Evon* v. *Andrews*, 211 Conn. 501, 559 A.2d 1131 (1989). The majority determined that it was "[a] combination of the lack of supervision, [the child's] own conduct and the conduct of another student [which] caused the injuries," and as a result could "not rise to the level of imminence necessary to overcome the defendants' immunity." *Purzycki* v. *Fairfield*, supra, 44 Conn. App. 366.

The dissent concluded, however, that the facts of the present case were more analogous to *Burns* v. *Board of Education*, 228 Conn. 640, 638 A.2d 1 (1994). *Purzycki* v. *Fairfield*, supra, 44 Conn. App. 368–69 (*Heiman, J.*, dissenting). More specifically, because the question of the existence of imminent harm is a factual issue, and because there was sufficient evidence for the jury to have concluded that the lack of supervision

subjected the child to a risk of imminent harm, the dissent concluded that the trial court should have rendered judgment in accordance with the jury verdict. Id., 369–70 (*Heiman, J.*, dissenting). Upon the plaintiffs' application, we granted certification to appeal limited to the following issue: "Was the trial court correct in setting aside the verdict on the ground that the plaintiffs failed to prove that the plaintiff child was subject to imminent harm, an exception to a municipal employee's immunity from liability when performing discretionary acts?" *Purzycki* v. *Fairfield*, 240 Conn. 926, 692 A.2d 1282 (1997).

I

The plaintiffs claim that the trial court improperly set aside the jury verdict in their favor. The plaintiffs contend that the jury correctly found that the imminent harm-identifiable person exclusion to the doctrine of governmental immunity was applicable to this case. Specifically, they argue that "[t]he danger of the . . . child's unsupervised use of the school hallways during recess was of an imminent nature as it was limited to the one-half hour lunch recess of the second grade lunch period for each day the child was compelled by statute to be on school premises." Further, the plaintiffs emphasize, as Judge Heiman noted in his dissent, that " 'the principal of the elementary school admitted that if elementary schoolchildren are not supervised, they tend to run and engage in horseplay that often results in injuries.' " Quoting *Purzycki* v. *Fairfield*, supra, 44 Conn. App. 367 (*Heiman, J.*, dissenting). We agree with the plaintiffs.

"The trial court's function in setting aside a verdict and this court's role in reviewing that action are well settled. . . . The trial court should not set a verdict aside where there was some evidence upon which the jury could reasonably have based its verdict, but should

not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . . Limiting that discretion, however, is the litigants' constitutional right to have issues of fact determined by a jury where there is room for a reasonable difference of opinion among fair-minded jurors. . . . Because, in setting aside the verdict, the trial court has deprived the party in whose favor the verdict was rendered of [the] constitutional right to have factual issues resolved by the jury, we must examine the evidential basis of the verdict itself to determine whether the trial court abused its discretion. . . . In so doing, we must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial . . . ." (Citations omitted; internal quotation marks omitted.) *Labbe* v. *Pension Commission*, 239 Conn. 168, 191–93, 682 A.2d 490 (1996).

"Although municipalities are generally immune from liability in tort, municipal employees historically were personally liable for their own tortious conduct. *Evon* v. *Andrews*, [supra, 211 Conn. 505]; *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 165, 544 A.2d 1185 (1988). The doctrine of governmental immunity has provided some exceptions to the general rule of tort liability for municipal employees. [A] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act." (Internal quotation marks omitted.) *Burns* v. *Board of Education*, supra, 228 Conn. 645. "[T]he ultimate determination of whether qualified immunity applies is ordinarily a question of law for the court . . . [unless] there

are unresolved factual issues material to the applicability of the defense . . . [where] resolution of those factual issues is properly left to the jury." *Mulligan* v. *Rioux*, 229 Conn. 716, 736, 643 A.2d 1226 (1994).[4]

The plaintiffs concede that any duty owed by the defendants to the child was discretionary, not ministerial in nature.[5] Therefore, in order to prevail, the plaintiffs' claim must fall within one of the recognized exceptions to qualified immunity for discretionary acts. "Our cases recognize three such exceptions: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." (Internal quotation marks omitted.) *Burns* v. *Board of Education*, supra, 228 Conn. 645; *Evon* v. *Andrews*, supra, 211 Conn. 505.

The only exception to the qualified immunity of a municipal employee for discretionary acts that is relevant to the present case is the exception permitting a tort action in circumstances of likely imminent harm to an identifiable person. "We have construed this exception to apply not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims." *Burns* v. *Board of Education*, supra,

[4] Because the material facts of this case are undisputed, the question presented here is one of law.

[5] We note that "[t]he existence of a duty of care . . . is a matter of law for the court to decide. *Shore* v. *Stonington*, 187 Conn. 147, 151, 444 A.2d 1379 (1982) . . . ." (Citation omitted.) *Burns* v. *Board of Education*, supra, 228 Conn. 646. "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised." Id., 647. This duty can be "a ministerial or a clear and unequivocal discretionary duty." *Shore* v. *Stonington*, supra, 154. The parties conceded and the trial court found that a discretionary duty existed and the only question was whether the imminent harm exception applied.

228 Conn. 646. Moreover, we have established specifically that schoolchildren who are statutorily compelled to attend school, during school hours on school days, can be an identifiable class of victims. Id., 650. Therefore, we must inquire whether there was sufficient evidence for a jury to have found that imminent harm existed under these circumstances.

In *Burns,* a schoolchild slipped and fell due to icy conditions on a main accessway of the school campus, during school hours. In that case, "the danger was limited to the duration of the temporary icy condition in this particularly 'treacherous' area of the campus . . . [and] the potential for harm from a fall on ice was significant and foreseeable." Id. We concluded that governmental immunity was not a defense because a "[schoolchild] was one of a class of foreseeable victims to whom the superintendent owed a duty of protection in relation to the maintenance and safety of the school grounds . . . ." Id.

In reaching that conclusion in *Burns,* we distinguished it factually from *Evon.* In *Evon,* the plaintiff's decedent filed an action against the city of Waterbury and its officers claiming that they had been negligent in failing reasonably to inspect and enforce statutes concerning the maintenance of a multifamily rental unit that the decedent was occupying when it was destroyed by fire. *Evon* v. *Andrews,* supra, 211 Conn. 502. We concluded that the imminent harm exception for discretionary acts did not apply under those facts because "[t]he risk of fire implicates a wide range of factors that can occur, if at all, at some unspecified time in the future." Id., 508. We also stated that "[t]he class of possible victims of an unspecified fire that may occur at some unspecified time in the future is by no means a group of 'identifiable persons' . . . ." Id.

Under the facts of the present case, we conclude that this case is more analogous to *Burns* than it is to *Evon.*

In *Burns*, it was critical to our conclusion that governmental immunity was not a defense that "the danger was limited to the duration of the temporary . . . condition . . . [and that] the potential for harm . . . was significant and foreseeable." *Burns* v. *Board of Education*, supra, 228 Conn. 650. Similarly, the present case involves a limited time period and limited geographical area, namely, the one-half hour interval when second grade students were dismissed from the lunchroom to traverse an unsupervised hallway on their way to recess. Also, it involves a temporary condition, in that the principal testified that every other aspect of the lunch period involved supervision.[6] Finally, the risk of harm was significant and foreseeable, as shown by the principal's testimony "that if elementary schoolchildren are not supervised, they tend to run and engage in horseplay that often results in injuries." *Purzycki* v. *Fairfield*, supra, 44 Conn. App. 367 (*Heiman, J.*, dissenting). Thus, we follow *Burns* and, under the facts of the present case, conclude that there was sufficient evidence from which the jury reasonably could have found a foreseeably dangerous condition that was limited in duration and geographical scope.

The defendants and the amici curiae claim that the risk of harm presented here was more similar to *Evon* because there was evidence that this type of harm had not previously occurred during the twenty-two year time period in which the same level of supervision had occurred. The defendants also point out that the hallway itself harbored no dangers or defects. We disagree. There was no evidence from which the jury could have inferred that no such injuries had occurred.[7] Moreover,

---

[6] First, the students marched single file into the lunchroom escorted by their teacher. Then, two monitors were in attendance in the all-purpose room while the students ate their lunch. Finally, two monitors supervised the playground during the remainder of the recess.

[7] The testimony elicited from the principal regarding the history of injuries at Roger Sherman School was limited in scope to injuries caused by the

although the absence of prior similar incidents may induce a jury to find an absence of liability, it does not foreclose a finding of liability, as a matter of law, for the first incident that occurs.

Furthermore, as noted previously, the imminent harm was limited to a one-half hour period each day when the second grade students were dismissed to traverse an unsupervised hallway, when school administrators were aware that unsupervised children are more likely to run and engage in horseplay leading to injuries. Therefore, because the school administrators here had reason to foresee the danger that could occur on a daily basis, the harm in the present case was not as remote a possibility as was the harm in *Evon*.

## II

The defendants also offer four alternate grounds for affirming the Appellate Court's judgment, namely, that: (1) the doctrine of sovereign immunity would bar the plaintiffs' claim; (2) the jury reasonably could not have found that the defendants' negligence was an actual or proximate cause of the child's injuries; (3) there was insufficient evidence for the jury to have found a duty to supervise or a breach of such a duty; and (4) the defendants stood in loco parentis to the child and are thereby granted immunity. We do not find any of these alternate grounds persuasive.

## A

First, the defendants proffer the doctrine of sovereign immunity as a basis for affirming the judgment of the Appellate Court. The defendants argue that local boards

---

breaking of a glass partition in the same door. He testified that the glass doors were never broken and shattered. He was never asked if, during the previous twenty-two years, any injuries had occurred in the hallway during the lunch hour or while children were going out to recess. Because this broader inquiry was never made, there was no evidence from which the jury could draw such an inference.

of education are agents of the state when performing educational functions. They follow this assertion with the proposition that the state, unless it consents to be sued, enjoys sovereign immunity from suit, and that such immunity has been extended to agents of the state acting on its behalf and is not subject to the governmental immunity exceptions.

Although these statements of the law are accurate, our jurisprudence has created a dichotomy in which local boards of education are agents of the state for some purposes and agents of the municipality for others. *Heigl* v. *Board of Education*, 218 Conn. 1, 3–4, 587 A.2d 423 (1991). To determine whether the doctrine of sovereign immunity applies to a local school board, we look to whether the "action would operate to control or interfere with the activities of the state . . . ." *Cahill* v. *Board of Education*, 187 Conn. 94, 102, 444 A.2d 907 (1982). The duty to supervise students is performed for the benefit of the municipality. See *Burns* v. *Board of Education*, supra, 228 Conn. 640; *Heigl* v. *Board of Education*, supra, 7–8. Therefore, sovereign immunity is not implicated in the present case.

B

The defendants next contend that there was insufficient evidence for a jury to have found that the defendants' negligence was the cause in fact of the child's injuries. They indicate that because the plaintiffs failed to prove that the child's injury would not have occurred if monitors had been in place, causation was not proven. We are not persuaded.

" '[T]he constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fairminded [persons] passed upon by the jury and not by the court.' " *State* v. *Wooten*, 227 Conn. 677, 696, 631 A.2d 271 (1993). "We do not sit as the 'seventh juror'

when we review the sufficiency of the evidence; *State* v. *King*, 216 Conn. 585, 602, 583 A.2d 896 (1990); rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . . Moreover, '[i]n reviewing the jury verdict, it is well to remember that [j]urors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct.' " *State* v. *Ford*, 230 Conn. 686, 693, 646 A.2d 147 (1994).

The test for cause in fact is " '[w]ould the injury have occurred were it not for [the defendant's] negligent . . . conduct . . . ?' " *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 605, 662 A.2d 753 (1995). Proximate cause is defined as " '[a]n actual cause that is a substantial factor in the resulting harm . . . .' " Id., 606. "The substantial factor test, in truth, reflects the inquiry fundamental to all proximate cause questions; that is, whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." (Internal quotation marks omitted.) *Doe* v. *Manheimer*, 212 Conn. 748, 758, 563 A.2d 699 (1989).

In the present case, the plaintiffs produced evidence that the principal knew, based upon his knowledge of the relatively minor degree of judgment and experience of young schoolchildren, that they repeatedly violated the rules and that they will engage in horseplay when left unsupervised. The plaintiffs also produced evidence that the students were supervised at all other aspects of lunch and recess, except when traveling in that hallway from the all-purpose room to the playground, and that the dismissal of children from the lunchroom was random in that they were given the discretion to leave on

their own or in groups. In its memorandum of decision, the trial court found "that the jury could have reasonably inferred that the absence of an adult watching the [child] as he traveled from the 'all-purpose' room to the playground was a substantial factor in causing the [child] to run in the hallway, believing he could do so with impunity." Also, "a jury could reasonably find that teachers busy teaching in their own classrooms can hardly be considered to be adequately monitoring an adjacent hallway." *Purzycki* v. *Fairfield*, supra, 44 Conn. App. 367 n.1 (*Heiman, J.*, dissenting). Therefore, the jury reasonably could have found that the failure to supervise the children proximately caused the child's injuries. On the basis of these facts as set forth in the record, causation was a determination of fact for the jury. Therefore, the defendants cannot prevail under this alternate ground for affirmance.

C

Next, the defendants claim that judgment should be affirmed because there was insufficient evidence to establish any basis upon which the jury could find the existence of a duty to supervise or a breach of such a duty. In support of this claim, the defendants argue, citing *Heigl* v. *Board of Education*, supra, 218 Conn. 8, that "Connecticut case law has never recognized, a specific duty to supervise students." *Heigl* does not, however, support the defendants' claim. In that case we declared: "Neither the General Statutes nor our decisional law has ever stated that a board of education has a specific duty to supervise *high school* students." (Emphasis added.) Id. The child in the present case was a second grade student and not a high school student. In *Heigl*, we further stated that, if such a duty existed, actions taken pursuant to such a duty are discretionary. Id. On the basis of our conclusion that the plaintiffs have adequately proven the imminent harm to an identifiable

person exception to governmental immunity for discretionary acts, this alternate theory also must fail.

D

Finally, the defendants argue that the judgment of the Appellate Court should be affirmed because the defendants stood in loco parentis to the child and are thereby immune from liability for negligence. They state that a teacher in a public school stands in loco parentis toward a pupil, and that the parental immunity doctrine bars an unemancipated minor from bringing an action against his or her parents for injuries sustained by the negligence of the parents. Completing the syllogism, they argue that the tort liability of school officials for negligence must also fall within parental immunity. We are not persuaded.

"The purpose of the doctrine [of parental immunity] is to preserve the integrity and unity of the family and to avoid unnecessarily injecting 'the machinery of the state' into the day-to-day exercise of parental discretion. . . . [T]here are few things more disruptive of familial harmony than a legal action by an unemancipated minor child against a parent." (Citations omitted.) *Squeglia* v. *Squeglia*, 234 Conn. 259, 265–66, 661 A.2d 1007 (1995). These concerns are not present here where an unemancipated minor and his parent are bringing an action against a school principal and a school board. Therefore, we decline to utilize this alternate ground as a basis for affirming the decision of the Appellate Court.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court with direction to render judgment for the plaintiffs in accordance with the jury verdict.

In this opinion BERDON, KATZ and PALMER, Js., concurred.

CALLAHAN, C. J., dissenting. The principal issue in this appeal is whether the Appellate Court properly affirmed the trial court's decision to set aside the jury's verdict. The court set the verdict aside on the ground that the undisputed facts and circumstances did not, as a matter of law, establish the existence of "imminent harm." Because I agree with the Appellate Court's conclusion that the trial court properly set the jury's verdict aside, I respectfully dissent.

"[T]his court has approved the practice of deciding the issue of governmental immunity as a matter of law. See *Shore* v. *Stonington*, [187 Conn. 147, 151, 444 A.2d 1379 (1982)] . . . ." (Citations omitted.) *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 170, 544 A.2d 1185 (1988). The question of governmental immunity goes to the heart of the existence of a duty of care, and "[t]he existence of a duty of care, an essential element of negligence, *is a matter of law for the court to decide.*" (Emphasis added.) *Burns* v. *Board of Education*, 228 Conn. 640, 646, 638 A.2d 1 (1994); *Gordon* v. *Bridgeport Housing Authority*, supra, 171; *Shore* v. *Stonington*, supra, 151. In a cause of action presented under the imminent harm to an identifiable person exception to the rule of governmental immunity for discretionary acts, the court must determine, as a threshold requirement, whether the public official should have been aware that his action or inaction would subject an identifiable person to *imminent* harm. *Shore* v. *Stonington*, supra, 153–54. In the absence of such a finding by the court, submission to the jury is improper and the cause of action must fail "for want of . . . a clear and unequivocal discretionary duty." Id. Accordingly, the initial determination of whether an exception to governmental immunity applies is properly a question of law for the courts, not a question of fact for the jury. Moreover, the parties did not dispute the relevant facts, as articulated by the

majority. The only question before this court, therefore, is whether these facts can, as a matter of law, establish the existence of imminent harm. Consequently, our review is de novo. See *Squeglia* v. *Squeglia*, 234 Conn. 259, 263, 661 A.2d 1007 (1995) (determination of applicability of common-law doctrine of parental immunity is question of law and our review is therefore de novo).

The majority determines that this case more closely resembles *Burns* v. *Board of Education*, supra, 228 Conn. 640, than it resembles *Evon* v. *Andrews*, 211 Conn. 501, 559 A.2d 1131 (1989). It concludes that the potential for imminent harm exists in this case, as in *Burns*, because the danger "involves a limited time period and limited geographical area, namely, the one-half hour interval when second grade students were dismissed from the lunchroom to traverse an unsupervised hallway on their way to recess." I believe that the majority's conclusion contravenes our well established precedents and, moreover, does not comport with the common understanding of the term "imminent." The American Heritage Dictionary, New College Edition, defines "imminent" as "[a]bout to occur; impending." Webster's Third New International Dictionary defines "imminent" as "ready to take place: near at hand: impending . . . hanging threateningly over one's head: menacingly near . . . ." Webster's New World Dictionary, Second College Edition, defines "imminent" as "likely to happen without delay, impending, threatening . . . ." Even if we look to the legal definition of "imminent," Black's Law Dictionary (6th Ed. 1990) defines that term as "[n]ear at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous . . . ." There can be no doubt that the common and legal understanding of the term "imminent" includes an element of both immediacy and certainty.

*Burns* did not create a new definition of "imminent harm" unrelated to the common understanding of that phrase. The *certainty* in *Burns* resulted from the fact that the "treacherous" condition of an icy pathway, constantly traveled by students, was inherently dangerous. *Burns* v. *Board of Education*, supra, 228 Conn. 650. The *immediacy* of the harm resulted because it could not occur at some indefinite time in the future. Rather, it would occur, if at all, during the short, but continuously existing period while the ice remained. The court in *Burns* noted that "[u]nlike the incident in *Evon* v. *Andrews*, supra, 211 Conn. 501, this accident could not have occurred at any time in the future; rather, the danger was limited to the duration of the temporary icy condition in this particularly '*treacherous*' area of the campus." (Emphasis added.) *Burns* v. *Board of Education*, supra, 60.

The majority concludes that the requirements of immediacy and certainty are met in this case because the hallway is not directly monitored for one-half hour every school day when students are dismissed to recess.[1] In analogizing to *Burns*, the majority apparently believes that minimally supervised hallways create a treacherous condition of finite duration, namely, thirty minutes every day of the school year, and, thus, constitute imminent harm as defined by *Burns*. This analysis fails to recognize, however, that the daily occurrence

[1] Unlike the majority, I would not refer to the hallway as "unsupervised." The record shows that it was a school policy that teachers in the classrooms adjoining the hallway were to keep their doors open and be attentive to activity in the hallway and to take action if necessary. While this court may conclude that this is not the best available form of supervision, that discretionary call is not ours to make. It is a policy choice left to the discretion of the school officials. We are not privy to the financial and scheduling constraints that inform the decision-making process. It is precisely for this reason that the doctrine of governmental immunity protects public officials from the 20/20 hindsight of courts operating to impose liability for discretionary acts performed by public officials in good faith. See *Shore* v. *Stonington*, supra, 187 Conn. 157.

of this one-half hour period has existed for the past twenty-two years. This hardly constitutes a "temporary" condition. The ability to assess the finite period in which the harm might occur does not mean that the harm is imminent. The harm could have occurred on any one of those days in past years or on any day in the future. This is precisely the lack of imminence that absolved officials of the city of Waterbury of liability in *Evon*.[2] Moreover, there is nothing inherently dangerous in a minimally supervised hallway to qualify it as a "treacherous" condition. The lack of direct supervision in a hallway may create a foreseeable harm, but it does not create a virtual certainty that harm will occur. I cannot agree with the majority's equation of an unsalted and unsanded ice patch on a regularly traveled pathway to the present garden-variety school hallway. The facts here demonstrate neither certainty nor immediacy of harm.

The similarity of this case to *Burns* begins and ends with the fact that the plaintiffs in both cases are students injured on school grounds. In *Burns*, the school custodian, in violation of school policy, failed to salt and sand an often used walkway where ice had formed. This created an inherently dangerous condition, from which injury was virtually certain to occur in the immediate future. Here, by contrast, school officials are being held liable for allocating their scarce human resources in the exercise of their best discretion and providing only limited monitoring of the hallway, but promulgating strict rules to prevent the type of harm that occurred. The minor plaintiff's disregard of those rules, along

[2] The majority also fails to acknowledge that the hallway receives the same level of reduced supervision throughout most of the day. At any given time during the day, unattended students may be traversing the halls. For example, students going to the nurse's office or to the bathroom anytime during the school day are not directly supervised in the hall. Thus, the finite period reasonably cannot be limited to the daily, one-half hour postlunch break.

with the intervening intentional act of a fellow student,[3] resulted in the harm to the plaintiff. Unlike *Burns*, the facts of this case do not compel the conclusion that we should override the sound public policy in favor of governmental immunity and hold these defendants liable.

I believe that the majority has strayed from the basic principles and policies that underlie the doctrine of governmental immunity. The history and purpose of the doctrine are aptly set forth in *Gordon* v. *Bridgeport Housing Authority*, supra, 208 Conn. 165–72. "This court first adopted a version of qualified official immunity in 1920 in *Wadsworth* v. *Middletown*, 94 Conn. 435, 439, 109 A. 246 (1920), where we said that since certain public officials were 'engaged upon a governmental duty . . . *so long as they act in good faith, in the exercise of an honest judgment*, and not in the abuse of their discretion, or maliciously or wantonly, they cannot be held liable.' " (Emphasis added.) *Gordon* v. *Bridgeport Housing Authority*, supra, 166.

We have developed limited exceptions to the doctrine of governmental immunity for discretionary acts on the basis of compelling policy considerations. See id. "One exception is when 'it would be *apparent* to the public officer that his failure to act would be likely to subject an identifiable person to imminent harm.' [*Shore* v. *Stonington*, supra, 187 Conn. 153]; see, e.g., *Sestito* v. *Groton*, [178 Conn. 520, 528, 423 A.2d 165 (1979)]."[4]

---

[3] The record indicates that a fellow student tripped the minor plaintiff as he ran toward the door. The actions of both students violated school rules. This fellow student was not made a defendant to this action.

[4] Other recognized exceptions include the situation where " 'a statute may specifically provide for a cause of action against an official or a municipality for failure to enforce certain laws, such as those designed to prevent disturbances of the peace by riotous assemblies. See, e.g., *Sestito* v. *Groton*, supra, [178 Conn.] 523–24 (General Statutes § 7-108).' *Shore* v. *Stonington*, supra, [187 Conn.] 154 . . . [and] where the complaint alleges an action involving malice, wantonness or intent to injure, rather than negligence. Id., 155; see,

(Emphasis added.) *Gordon* v. *Bridgeport Housing Authority*, supra, 208 Conn. 166. We emphasized that "[i]f a public duty exists, an official can be liable *only* if the act complained of is a ministerial act or one of the *narrow exceptions* to discretionary acts applies." (Emphasis added.) Id., 170.

Although the majority focuses on the distinction between *Burns* and *Evon*, it is necessary to consider the precedents that led to the decisions in both cases in order to define the scope of the "identifiable person subject to imminent harm" exception. See *Evon* v. *Andrews*, supra, 211 Conn. 507. The first articulation of this exception arose in *Sestito* v. *Groton*, supra, 178 Conn. 527–28. In *Sestito*, the facts, viewed most favorably to the plaintiff, revealed that an on-duty police officer observed a group of seven men, including the plaintiff's decedent, in a parking lot outside a bar. Id., 522. The officer was aware that one of the men was a known felony suspect. Id., 522–23. The members of the group had been drinking and were engaged in an argument that became physical. Id., 523. The officer did not intercede, however, until after gunshots were fired. Id. We concluded that the police officer might have owed a duty to the plaintiff's decedent and that the case should have been submitted to the jury. Id., 527–28. The doctrine of governmental immunity was not a bar to liability, as a matter of law, because the decedent could have been an identifiable person subject to imminent harm. The potential for harm was sufficiently immediate because it would last only as long as the brawl continued and was sufficiently certain in light of the fact that the police officer was observing a violent interaction involving drunkenness and known criminals. See id., 528.

e.g., *Stiebitz* v. *Mahoney*, 144 Conn. 443, 448–49, 134 A.2d 71 (1957); *Medeiros* v. *Kondo*, 55 Hawaii 499, 503, 522 P.2d 1269 (1974); 63 Am. Jur. 2d, Public Officers and Employees § 290." *Gordon* v. *Bridgeport Housing Authority*, supra, 208 Conn. 167.

By contrast, in *Shore* v. *Stonington*, supra, 187 Conn. 150–51, a police officer stopped a speeding automobile, the driver of which manifested obvious signs of intoxication. The officer did not arrest the driver, but instead, allowed him to proceed with only a warning. Id., 150. Less than one hour later, the driver struck and killed the plaintiff's decedent. Id. We concluded, as a matter of law, that the defendant had no reason to know that his failure to arrest the intoxicated driver would subject an identifiable person to imminent harm and thus precluded submission of the claim to the jury. Id., 154. We reasoned that the harm was not sufficiently imminent, i.e., not certain to occur or impending, to create the requisite special duty necessary to maintain a cause of action against a municipal official. Id., 156.

In *Evon* v. *Andrews*, supra, 211 Conn. 507, we relied on these two precedents as defining the scope of the exception and concluded that the facts presented could not meet the requirements of the exception. We emphasized that "[t]he 'discrete person/imminent harm' exception to the general rule of governmental immunity for employees engaged in discretionary activities *has received very limited recognition in this state.*" (Emphasis added.) Id., 507. In *Evon*, the plaintiffs alleged that municipal officials improperly enforced fire code regulations with respect to a particular rental dwelling. Id., 502. That failure allegedly resulted in a fire at the dwelling, which caused the death of several residents. Id. We stated that we could not conclude that the decedents were subject to imminent harm because, "[i]n the present instance, the *fire could have occurred at any future time or not at all.*" (Emphasis added.) Id., 508. As in this case, the harm in *Evon* was foreseeable, but that harm was neither immediate nor certain to occur. Id.

We again addressed this exception in *Burns* v. *Board of Education*, supra, 228 Conn. 640. In *Burns*, a fourteen

year old high school student broke his arm when he slipped on a patch of ice on a constantly traveled walkway that provided the main access between two buildings at his school. Id., 642. Contrary to school policy mandating that the custodian inspect and apply salt and sand "as necessary," the ice patch was neither salted nor sanded. Id. We concluded that this inherently dangerous condition, which would exist for a limited duration only, subjected the students at the school to imminent harm. Id., 650. In *Burns,* we were called on to determine whether a victim may be "identifiable" if he or she is a member of a foreseeable class of victims. Id., 644. We answered that question in the affirmative. Id. We did not, however, abandon the concept of imminent harm developed through our precedents, culminating in *Evon.* See id., 650.

The cases in this area of law do not support a conclusion that the minor plaintiff in the present matter was subject to imminent harm. We have concluded that the possibility that an intoxicated driver would harm a fellow motorist is not sufficiently imminent to meet that narrow exception. We also have concluded that the failure to enforce regulations and codes that serve to prevent the danger of fires in rental dwellings did not subject the residents of such a dwelling to imminent harm. We have found imminent harm only in the clearest cases such as where a police officer observed a violent public brawl and failed to intercede, and where a school official allowed an inherently dangerous condition to persist on school property. In light of these precedents, I would not conclude that the possibility that a child might be harmed as a result of a policy of allowing schoolchildren to travel in a generic hallway without direct supervision, a policy in effect without similar incident for twenty-two years, constitutes imminent harm. It cannot be said that it was *apparent* to the defendants that the lack of direct supervision in

the hallways subjected the minor plaintiff to imminent harm. Therefore, no special duty was created in the defendants. See *Shore* v. *Stonington*, supra, 187 Conn. 153–54.

Throughout the many developments in the doctrine of governmental immunity, we have steadfastly retained the notion that public policy mandates only limited and narrow exceptions. From our earliest articulation of the doctrine, we have acknowledged as its governing principle that "[t]he affairs of government cannot be conducted with absolute exactitude, and public officials cannot be expected to act in all cases with certain judgment. Timidity and doubt would govern their performance of public duty if they acted in the consciousness that personal liability might follow, no matter how closely they followed their best discretion." *Wadsworth* v. *Middletown*, supra, 94 Conn. 440. "Where the discretion has been exercised erroneously but in good faith through an error of judgment, the public official should not be required to pay damages for his acts." Id. The doctrine of governmental immunity implicitly recognizes that municipalities provide for a virtually limitless array of services, each of which involves discretionary decision making. Governmental immunity allows decisions to be made by public officials without the debilitating concern that an honest mistake, made despite the exercise of good faith, will subject the municipality or the official to liability. Id.

Heretofore, we have consistently adhered to this principle. Although we repeatedly have been petitioned to do away with the doctrine of governmental immunity, we have declined to do so, noting that " '[t]he adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society.' " *Evon* v. *Andrews*, supra, 211 Conn. 508, quoting *Shore* v. *Stonington*, supra, 187 Conn. 157. "We do not think that the public interest is served by allowing a jury of

laymen with the benefit of 20/20 hindsight to second-guess the exercise of a [public official's] discretionary public duty. Such discretion is no discretion at all." *Shore* v. *Stonington*, supra, 157.

I am compelled to disagree with the majority because I believe that imposition of liability in this case sounds the death knell of governmental immunity and will unduly undermine the ability of public officials to exercise discretion. The majority has equated mere foreseeability that some harm might *possibly* occur at some time in the future with imminent harm. As a result, I fear that public officials, in the performance of their public duties, will no longer enjoy any greater immunity for discretionary acts than does the average citizen. If foreseeability is the only requirement, public officials will be held liable for every discretionary act that has an unfortunate result. While the majority retains the token language of the imminent harm requirement, it has reduced the standard of imminence to make it no standard at all. The majority concludes that "the harm in the present case was not as remote a possibility as was the harm in *Evon*." This reasoning is not compelling, however, because inspectors charged with enforcing the fire codes could *foresee* that improper inspections might result in a fire that could occur on any day. Moreover, a police officer could *foresee* that the decision not to arrest a drunk driver could result in harm to other motorists or pedestrians that very same day or hour. The majority's conclusion equates imminence of harm with the foreseeability that harm might result, effectively eliminating the requirement that the foreseeable harm must also be virtually certain to occur in the immediate future. See, e.g., *Evon* v. *Andrews*, supra, 211 Conn. 508. The once narrow exception to governmental immunity for discretionary acts now swallows the rule.

The conclusion reached by the majority not only serves to undermine the exercise of discretion by

municipal officials in general, but it casts a chilling pall over the educational system. Under the majority's decision, there is no point at which an educator may be confident that adequate supervision has been provided and proceed with the business of educating. It can always be alleged that tighter supervision might have reduced the risk of harm and that failure to provide greater supervision subjected students to foreseeable harm. Educators, consequently, will be forced to allocate their scarce resources away from essentials and devote their time to supervising children at the expense of educating them. It is firmly established that " ' "[t]he question whether the principles of governmental immunity from suit and liability can best serve this and succeeding generations has become, by force of the long and firm establishment of these principles as precedent, a matter for legislative, not judicial, determination." ' " *Gordon* v. *Bridgeport Housing Authority*, supra, 208 Conn. 183; *Rogan* v. *Board of Trustees*, 178 Conn. 579, 582, 424 A.2d 274 (1979); accord *Wysocki* v. *Derby*, 140 Conn. 173, 175, 98 A.2d 659 (1953). While the majority may believe that governmental immunity is no longer a good policy or that governmental immunity should apply differently to school officials, I think it has exceeded it judicial function by making that legislative determination.

I respectfully dissent.