## JANE DOE v. JAMES PETERSEN ET AL.
### (SC 17442)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued March 10—officially released August 22, 2006

*Gerard S. Sack,* for the appellant (plaintiff).

*John L. Altieri, Jr.,* with whom was *Duncan J. Forsyth,* for the appellee (defendant town of Wethersfield).

*Opinion*

ZARELLA, J. Connecticut municipalities are statutorily immune from negligence liability resulting from the discretionary acts of their employees, officers and agents. An exception to this immunity exists—and municipalities are exposed to possible liability—when "the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." *Evon* v. *Andrews*, 211 Conn. 501, 505, 559 A.2d 1131 (1989). This appeal requires us to consider whether that exception applies to the facts of the present case. Specifically, we must decide whether the defendant town of Wethersfield (town) is exposed to liability for the allegedly negligent response of its employee, William Pitkin, to the unsuccessful attempt of the plaintiff, Jane Doe,[1] to inform Pitkin that she had been sexually assaulted by another town employee, James Petersen, the named defendant. We conclude that the circumstances do not fall within the exception and that the town is therefore immune from negligence liability for Pitkin's discretionary conduct. Accordingly, we affirm the judgment of the trial court.

The following facts are relevant to this appeal. The plaintiff alleged that, in August, 1976, when she was fifteen years old, she was enrolled in a tennis instruction program offered by the town. At that time, Petersen was employed by the town to conduct and supervise various recreational activities, including the tennis program. One day in August, 1976, after a thunderstorm caused the cancellation of tennis, Petersen offered to drive the plaintiff home. According to the plaintiff, Petersen stopped the car and forced her to perform oral

---

[1] In accordance with the policy of protecting the privacy interests of victims of sexual abuse, we do not identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

sex on him. The plaintiff further alleged that, after the assault was concluded, Petersen told her that the incident was her fault for "teasing" him all summer and "dressing sexy," and that nobody would believe her if she attempted to disclose the incident.

The plaintiff alleged that, a few days after the alleged assault, she approached Pitkin, who then was Petersen's supervisor and director of the town's parks and recreation department, to speak with him about the incident. The plaintiff's deposition testimony chronicled her encounter with Pitkin as follows: "I told [Pitkin] that I needed to talk to him about something that had happened a couple [of] nights earlier between me and . . . Petersen. And [Pitkin] stopped and he said okay. Was this during tennis, something to that effect. And I said actually, no, the night of the big storm, they closed the park and he offered me a ride home, only he didn't take me home. And I don't think I got much past that, just my anxiety level, he immediately started, you know—he immediately made me feel that he was very nervous with what I was trying to say. And he said, 'Hold on a second, hold on a second, this is something the two of you [have] got to work out. It's obviously a misunderstanding. I'm not going to get involved. Work it out.' And [he] got in his car and left." The plaintiff did not tell Pitkin that she had been sexually assaulted and made no further attempt to speak with him about the incident. The plaintiff alleges that Pitkin's response to her attempt to inform him of the assault "was confirmation of exactly what Petersen had said to [her] in the car after [the assault] happened, that no one would believe [her] . . . ."

On May 25, 2004, the plaintiff commenced an action in four counts against Petersen and the town. The first three counts, which were directed against Petersen, sounded in intentional assault, negligent infliction of emotional distress, and intentional infliction of emo-

tional distress.[2] In the fourth count, which was directed against the town, the plaintiff alleged, inter alia, that she "suffered terror and long term psychological injury" as a result of "the carelessness and negligence of the [t]own . . . its employees, servants or agents . . . in that they failed to acknowledge, respond to or investigate [the] plaintiff's report of Petersen's conduct . . . ."[3] The town responded by asserting a series of special defenses, including governmental immunity.

On September 15, 2004, the town filed a motion for summary judgment on the fourth count of the complaint on the grounds that (1) the plaintiff's claim was "barred as a matter of law by governmental immunity," (2) the plaintiff's claim was time barred, and (3) the plaintiff had produced "insufficient evidence to create a triable issue of fact with respect to [her] claim that [the town] was negligent in failing to anticipate and prevent the alleged sexual assault." The plaintiff objected to each ground raised by the town.

On November 30, 2004, the trial court granted the town's motion on governmental immunity grounds

[2] The plaintiff subsequently withdrew her complaint as to Petersen, leaving the town as the remaining defendant.

[3] The plaintiff alleged five additional bases for her negligence claim, namely, that the town, its employees, servants or agents (1) "knew [or] should have known of the improper conduct of . . . Petersen, and/or the likelihood of such conduct, but failed to take action to prevent such conduct or otherwise to protect [the] plaintiff," (2) "failed to adequately supervise . . . Petersen," (3) "failed to discipline Petersen or take other corrective action," (4) "failed to propose, adopt and/or implement adequate policies and procedures relating to the circumstances under which employees such as Petersen could interact with minors," and (5) "failed to provide a safe environment for the minor plaintiff when in the exercise of reasonable care, it could and should have done so."

At oral argument before this court, the plaintiff conceded that the only allegation of negligence relevant to the present appeal is the allegation that the town, its employees, servants or agents "failed to acknowledge, respond to or investigate [the] plaintiff's report of Petersen's conduct . . . ." The plaintiff further conceded that, if she prevails in this appeal, she would be allowed to proceed only with respect to that allegation.

without addressing the town's other two claims. The trial court concluded that Pitkin's actions were discretionary and, therefore, presumptively immune from liability. The trial court further concluded that the governmental immunity exception permitting the imposition of liability "in circumstances of likely imminent harm to an identifiable person"—which the trial court described as the only exception relevant to the plaintiff's claim—applies only to "temporary hazardous condition[s]," confined to a "limited temporal and geographical zone . . . ." (Internal quotation marks omitted.) The trial court concluded that, because Petersen's alleged sexual assault of the plaintiff "could have happened at any time she came to the park, in any area of the park, or elsewhere," the threat of Petersen's assault was not sufficiently limited in temporal and geographic scope to fall within the "imminent harm" exception. The trial court thereafter rendered judgment in favor of the town, from which the plaintiff appealed to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the plaintiff claims that, as a matter of law, she was an identifiable victim or within a class of identifiable victims. She analogizes her situation to that of the plaintiff in *Burns* v. *Board of Education*, 228 Conn. 640, 650, 638 A.2d 1 (1994), in which we determined that a school's failure to remedy an unsafe condition on school grounds exposed an identifiable class of persons to imminent harm.[4] The plaintiff also argues that genuine issues of material fact exist as to whether Pitkin's response to her attempt to inform him of the

---

[4] The plaintiff alternatively argues that the record was insufficient to support a conclusion that she was not an identifiable person. See footnote 12 of this opinion.

assault was likely to subject her to imminent harm of "terror and long term psychological injury . . . ."[5]

The town responds that the trial court correctly determined that the harm alleged was not sufficiently limited in duration and geographic scope. The town also argues that the plaintiff's evidence is insufficient to create a genuine issue of material fact regarding Pitkin's ability to anticipate any imminent harm to the plaintiff.

"As a preliminary matter, we set forth the standard of review. [T]he standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Craig* v. *Stafford Construction, Inc.*, 271 Conn. 78, 83, 856 A.2d 372 (2004)." (Internal quotation marks omitted.) *D'Eramo* v. *Smith*, 273 Conn. 610, 619, 872 A.2d 408 (2005). The issue of governmental immunity is simply a question of the existence of a duty of care, and "this court has approved the practice of deciding the issue of governmental immunity as a matter of law." *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 170, 544 A.2d 1185 (1988).

---

[5] The trial court focused on the harm of a sexual assault against the plaintiff, concluding that such an assault was not sufficiently limited to fall within the narrow scope of the "imminent harm" exception to discretionary act immunity because it "could have happened at any time she came to the park, in any area of the park, or elsewhere." The plaintiff objected to the trial court's focus in her brief to this court: "[T]his case was *not* solely about the failure of [the town] to have *prevented* the sexual misconduct perpetrated by Petersen. It was *also* about damages caused to the plaintiff by the *aftermath* of that incident, when [the] plaintiff attempted to report it to . . . Pitkin, and was rebuffed in those efforts." (Emphasis in original.)

The plaintiff's point is well taken. It does not require reversal of the trial court's judgment, however, for reasons that we hereinafter explain in this opinion.

General Statutes § 52-557n[6] abandons the common-law principle of municipal sovereign immunity and establishes the circumstances in which a municipality may be liable for damages. *Tryon* v. *North Branford*, 58 Conn. App. 702, 721, 755 A.2d 317 (2000). One such circumstance is a negligent act or omission of a municipal officer acting within the scope of his or her employment or official duties. General Statutes § 52-557n (a) (1) (A). General Statutes § 52-557n (a) (2) (B), however, explicitly shields a municipality from liability for damages to person or property caused by the "negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

Municipal officials are immune from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability "would cramp the exercise of official discretion beyond the limits desirable in our society."[7] *Shore*

---

[6] General Statutes § 52-557n provides in relevant part: "(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. . . ."

[7] Another significant rationale for governmental immunity is rooted in the notion of separation of powers. This rationale holds that for courts to second-guess municipal policy making by imposing tort liability "would be to take the administration of municipal affairs out of the hands to which it has been entrusted by law." *Lansing* v. *Toolan*, 37 Mich. 152, 154 (1877) (Cooley, C. J.). This rationale, however, is particularly applicable to "basic policy

v. *Stonington*, 187 Conn. 147, 157, 444 A.2d 1379 (1982). Discretionary act immunity "reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury." *Haddock* v. *New York*, 75 N.Y.2d 478, 484, 553 N.E.2d 987, 554 N.Y.S.2d 439 (1990). In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts "to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Evon* v. *Andrews*, supra, 211 Conn. 505. This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts. See 18 E. McQuillin, Municipal Corporations (3d Ed. 2003) § 53.04.10, pp. 179–81 ("[a] municipality is liable for negligence of its employees at the operational level where there is no room for policy judgment").

We have identified three exceptions to discretionary act immunity. Each of these exceptions represents a situation in which the public official's "duty to act is [so] clear and unequivocal" that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force. *Shore* v. *Stonington*, supra, 187 Conn. 153. First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure. E.g., *Mulligan* v. *Rioux*, 229 Conn. 716, 728, 732, 643 A.2d 1226 (1994). Second, liability may be imposed for a discretionary act when a statute provides for a cause

decisions"; *Johnson* v. *State*, 69 Cal. 2d 782, 793, 447 P.2d 352, 73 Cal. Rptr. 240 (1968); and is of only tangential relevance to the small-scale discretionary acts alleged in the present case.

of action against a municipality or municipal official for failure to enforce certain laws. See, e.g., *Sestito* v. *Groton*, 178 Conn. 520, 525–28, 423 A.2d 165 (1979). Third, liability may be imposed when "the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ."[8] *Evon* v. *Andrews*, supra, 211 Conn. 505.

In the present case, the plaintiff concedes that Pitkin's actions were discretionary in nature. The plaintiff further concedes that the "imminent harm" exception is the only relevant exception to discretionary act immunity. Our inquiry therefore focuses on the scope of this exception and whether it shields the town from liability for Pitkin's allegedly negligent actions.

Discretionary act immunity is abrogated when "the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." Id. By its own terms, this test requires three things: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm. The resolution of the present appeal turns on the third requirement.

The "apparentness" requirement is grounded in the policy goal underlying all discretionary act immunity, that is, "keeping public officials unafraid" to exercise judgment. G. Bermann, "Integrating Governmental and Officer Tort Liability," 77 Colum. L. Rev. 1175, 1180 (1977). It surely would ill serve this goal to expose a public official to liability for his or her failure to respond

---

[8] This exception has been interpreted to apply "not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims." *Burns* v. *Board of Education*, supra, 228 Conn. 646.

adequately to a harm that was *not* apparent to him or her.

In *Shore* v. *Stonington,* supra, 187 Conn. 147, our first decision to conclude expressly that a public officer does not enjoy discretionary act immunity when he or she is subject to a "clear and unequivocal" duty to act; id., 153; we concluded that a police officer enjoyed discretionary act immunity for his decision to let an apparently intoxicated motorist continue to drive after he had pulled the motorist over for speeding.[9] Id., 154. We reached this conclusion because a threshold requirement of the "imminent harm" exception was not satisfied, "namely, that during his encounter with [the motorist], [the officer] *could have been aware* that [the motorist's] conduct threatened an identifiable victim with imminent harm." (Emphasis added.) Id. Because the police officer could not have been aware that the likely consequence of his action was a fatal collision, no clear and unequivocal duty to act to prevent that collision existed, and abrogation of discretionary act immunity under the "imminent harm" exception was inappropriate. Id.

*Shore* remains our only decision in which we declined to abrogate discretionary act immunity on the basis of a public officer's lack of awareness of the likely consequences of his conduct. In other decisions, we have relied on the other elements of the "imminent harm" test to gauge the applicability of this exception. For instance, in *Evon* v. *Andrews,* supra, 211 Conn. 505–508, we relied on the "identifiability" and "imminency" elements of the test to conclude that municipal officers were not exposed to liability for their allegedly negligent failure to enforce, inter alia, certain provisions

[9] The motorist collided with another vehicle, killing its driver, less than one hour after the police officer had stopped him and let him drive away. *Shore* v. *Stonington,* supra, 187 Conn. 151.

of a municipal housing code vis-á-vis a residential premises that subsequently was the site of a fatal fire. In *Evon*, we concluded that "[t]he risk of fire implicates a wide range of factors that can occur, if at all, at some unspecified time in the future. The class of possible victims of an unspecified fire that may occur at some unspecified time in the future is by no means a group of identifiable persons . . . . Furthermore, the [victims of the fire] were not subject to imminent harm. . . . [T]he fire could have occurred at any future time or not at all." (Citations omitted; internal quotation marks omitted.) Id., 508.

In *Burns* v. *Board of Education*, supra, 228 Conn. 642, school employees failed to remediate an icy patch on a well-traveled sidewalk of a high school's campus. We construed the "identifiability" requirement "to apply not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims." Id., 646. We relied heavily on the "imminency" requirement to reach our conclusion in *Purzycki* v. *Fairfield*, 244 Conn. 101, 109–10, 708 A.2d 937 (1998), and invoked the "identifiability" requirement to decide *Prescott* v. *Meriden*, 273 Conn. 759, 764–65, 873 A.2d 175 (2005).[10]

---

[10] A number of our decisions—particularly *Burns*, *Purzycki* and *Prescott*—have utilized criteria including the duration, geographic scope, significance and foreseeability of the risk of harm to gauge whether that risk correctly may be considered imminent. See, e.g., *Purzycki* v. *Fairfield*, supra, 244 Conn. 110 (concluding that abrogation of immunity was appropriate because "the jury reasonably could have found a foreseeably dangerous condition that was limited in duration and geographical scope"). The trial court in the present case also employed this method of analysis, finding that the "imminent harm" exception only applies to "temporary hazardous condition[s]," confined to a "limited temporal and geographical zone . . . ."

These criteria, however, are applicable only to the "imminency" requirement of the test, and are not particularly relevant to the "apparentness" requirement. Moreover, it seems awkward and forced to attempt to apply these criteria to a nonphysical risk of harm, such as that alleged by the plaintiff in the present case. While these criteria may have proven helpful in our decisions in *Burns*, *Purzycki* and *Prescott*, their application cannot be permitted to displace the core requirements of the "imminent harm" test: (1) an imminent harm; (2) an identifiable victim; and (3) a public official

In all of these cases, however, this court faithfully recited and applied the "apparentness" requirement. See id., 763; *Purzycki* v. *Fairfield*, supra, 244 Conn. 108; *Burns* v. *Board of Education*, supra, 228 Conn. 645–46; *Evon* v. *Andrews*, supra, 211 Conn. 505. But see *Purzycki* v. *Fairfield*, supra, 123–24 (*Callahan, C. J.*, dissenting) ("It cannot be said that it was *apparent* to the [public officials] that the lack of direct supervision in the hallways [of an elementary school] subjected the [student] to imminent harm [that is, being tripped by another student]. Therefore, no special duty was created in the [public officials]." [Emphasis in original.]).

The plaintiff claims that she suffered "terror and long term psychological injury" as a result of Pitkin's response to her failed attempt to inform him of the alleged assault. Petersen's assault of the plaintiff was unquestionably a necessary precondition to the harm alleged by the plaintiff; it would be impossible to understand the risk of "terror and long term psychological injury" that the plaintiff claims to have endured without being aware of the assault. Pitkin, however, had no knowledge of the assault, and the plaintiff did not apprise him of it. As the trial court found, the plaintiff said to Pitkin only that "the night of the big storm, they closed the park and [Petersen] offered me a ride home, only he didn't take me home." The plaintiff testified at her deposition that she "[did not] think [she] got much past that . . . ."[11] She never told Pitkin that she had

_____

to whom it is apparent that his or her conduct is likely to subject that victim to that harm.

[11] The plaintiff alleged at oral argument before this court that Pitkin actively had "cut [her] off from any further explanation," and that she "could do no more [because] she was not allowed to finish her conversation with [Pitkin]." These allegations, however, are unsupported by the record, which clearly indicates that the plaintiff herself failed to inform Pitkin that Petersen had sexually assaulted her.

Moreover, even if Pitkin actively had prevented the plaintiff from explaining the matter further, our analysis would not change. Pitkin still would have had no knowledge of the assault, and the record does not reflect

been sexually assaulted. Because Pitkin never became aware of the alleged assault, it could not have been apparent to him that his response to the plaintiff's concerns would have been likely to subject her to a risk of harm. Pitkin's conduct therefore does not fall within the ambit of the "imminent harm" exception to discretionary act immunity.

The plaintiff also argues that the trial court improperly failed to make an explicit finding as to whether the plaintiff was an identifiable person or within an identifiable class of foreseeable victims. This argument reveals two basic misunderstandings regarding the nature of the "imminent harm" exception.

First, contrary to the implication of the plaintiff's argument, the core requirements of the "imminent harm" exception are analyzed conjunctively. To prevail, the plaintiff must demonstrate that she was an identifiable person *and* was subject to imminent harm *and* that a public officer's conduct subjected her to that harm, despite the apparent likelihood of harm to her. Demonstration of less than all of these criteria is insufficient. The trial court's finding that the plaintiff was not subject to imminent harm therefore was itself a sufficient ground to grant the town's motion for summary judgment.[12]

Second, the criteria of "identifiable person" and "imminent harm" must be evaluated with reference to each other. An allegedly identifiable person must be identifiable as a potential victim of a specific imminent

---

any other possible basis on which to conclude that the risk of "terror and long term psychological injury" to the plaintiff would have been apparent to Pitkin.

[12] This circumstance also defeats the plaintiff's converse argument that "the record before the trial court was too sparse for it to have decided that the plaintiff was *not* an 'identifiable victim' as a matter of law." (Emphasis in original.) See footnote 3 of this opinion. The trial court did not need to determine whether the plaintiff was an identifiable person to deny her claim.

harm. Likewise, the alleged imminent harm must be imminent in terms of its impact on a specific identifiable person. See, e.g., *Evon* v. *Andrews*, supra, 211 Conn. 508 ("the class of possible victims of an unspecified fire that may occur at some unspecified time in the future is by no means a group of 'identifiable persons' "). The plaintiff seems to conceive of the two criteria as wholly unconnected by arguing that she was an "identifiable person" without regard to whether she was subject to imminent harm. For the purposes of the "imminent harm" exception, however, it is impossible to be an identifiable person in the absence of any corresponding imminent harm.

The plaintiff finally argues that "genuine issues of material fact remain in dispute as to whether the plaintiff was subject to imminent harm." This argument also fails for two reasons. First, as we already have stated, the issue of governmental immunity is simply a question of the existence of a duty of care, which is a question of law. "*Only* if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." (Emphasis added.) *Gordon* v. *Bridgeport Housing Authority*, supra, 208 Conn. 171. Moreover, as we already have stated, the "imminent harm" test is conjunctive. Because any risk of harm to the plaintiff was not apparent to Pitkin at the time of his conduct, the issue of whether the plaintiff was subject to imminent harm does not affect our conclusion that Pitkin's conduct is subject to discretionary act immunity.

The judgment is affirmed.

In this opinion the other justices concurred.