******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KATHLEEN BLIGH *v.* TRAVELERS HOME AND
MARINE INSURANCE COMPANY
(AC 35953)

DiPentima, C. J., and Lavine and Harper, Js.

*Argued October 27, 2014—officially released January 6, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Vacchelli, J.)

*Timothy Brignole*, with whom, on the brief, was *Juri
E. Taalman*, for the appellant (plaintiff).

*Thomas P. Chapman*, for the appellee (defendant).

*Opinion*

LAVINE, J. The plaintiff, Kathleen Bligh, appeals from the judgment of the trial court, rendered after a trial to the jury, in this underinsured motorist action against the defendant, Travelers Home and Marine Insurance Company. On appeal, the plaintiff claims that the court abused its discretion (1) by denying her motion for additur, (2) with respect to certain evidentiary rulings,[1] and (3) by sustaining an objection by counsel for the defendant to a statement made by the plaintiff's counsel during closing argument. We affirm the judgment of the trial court.

The following procedural history underlies the plaintiff's claims on appeal. The plaintiff was injured in a motor vehicle collision in 2008 (2008 collision). As a result of the collision, the plaintiff sustained injuries, which she claimed limited her ability to enjoy life's activities. After she exhausted the $50,000 limit of the tortfeasor's insurance policy,[2] the plaintiff commenced the present action against the defendant for underinsured motorist benefits. The jury returned a verdict in favor of the plaintiff in the amount of $77,000. The plaintiff then filed motions to set aside the verdict, for a new trial, and for additur. The defendant filed a motion to reduce the jury's verdict by the amount of the tortfeasor's liability policy. In a thorough memorandum of decision, the court denied the plaintiff's postverdict motions; granted the defendant's motion to reduce the verdict; and rendered judgment in favor of the plaintiff in the amount of $27,000, plus costs.

The court set forth the facts that the jury reasonably could have found. Shortly after 9 p.m. on February 28, 2008, the plaintiff, then a nineteen year old college student, was returning home from her part-time job in a 2005 Nissan Murano (Nissan). She was stopped at a traffic signal on Elm Street in Enfield when a 2006 two-door Honda sedan struck the rear of the Nissan. The speed limit was thirty miles per hour, and the tortfeasor left no skid marks. The plaintiff claimed that the impact pushed the Nissan fifty feet. Joseph Fillmore, an Enfield police officer, responded to the scene. He saw no serious injuries to either operator and neither of them reported any injuries. The Honda sustained damage to the front bumper, hood, and a headlight.

Donna Mattera, the plaintiff's mother and owner of the Nissan, went to the scene and noted that the Nissan had a dislocated bumper. Although Mattera's former husband, Tom Bligh, reassembled the bumper, Mattera filed a property damage claim with Progressive four months after the collision. Nicole Souza, an agent for Progressive, inspected the Nissan and took photographs of the damage. The photographs revealed only minor scratches and dents to the bumper and a small crack in the housing around the exhaust pipe. Souza

issued Mattera a check in the amount of $1115 for the damage.

The plaintiff claimed that as a result of the 2008 collision, she suffered a debilitating injury to her back, which causes her chronic, relentless, and painful muscle spasms. She claims that she experiences only temporary relief after receiving what she described as cripplingly painful, invasive, and expensive epidural injections several times a year. Both the plaintiff and Mattera denied that the plaintiff had any back problems prior to the 2008 collision. The plaintiff had an active life of school, sports, and part-time employment prior to the 2008 collision. In particular, the plaintiff was an avid, competitive figure skater, but she had stopped skating prior to the 2008 collision.

The jury also could have found that on March 8, 2007, the plaintiff was involved in a front end collision (2007 collision) when a vehicle coming from the opposite direction made a left turn in front of her, causing her right hand to hit the dashboard. She sustained injuries to her wrist and neck, and underwent surgery to repair her wrist. The plaintiff denied that she injured her back in the 2007 collision, but the records of Tilak Gooneratne, the plaintiff's pediatrician, contain a note that he had prescribed pain medication for the plaintiff after he received a telephone call on March 9, 2007, in which it was reported that the plaintiff was experiencing back and neck pain. The plaintiff denied calling Gooneratne's office to complain of back pain. Although Mattera testified extensively about the plaintiff's injuries and treatment, she did not confirm that she telephoned Gooneratne's office seeking medication for the plaintiff's back pain.

The jury could have found that the plaintiff received the following care for her alleged injuries after the 2008 collision. The day after the collision, the plaintiff experienced headaches and neck and back pain. She saw Gooneratne, who prescribed ice, heat, and Motrin, and referred the plaintiff to an orthopedist. The orthopedist doubted the plaintiff's complaints, and the plaintiff was not satisfied with the care and treatment she received. The plaintiff also consulted a neurosurgeon and began a course of physical therapy, which she likewise found to be unsatisfactory.

The plaintiff then consulted with William Pesce, a pain management physician. He gave the plaintiff injections that temporarily alleviated her pain. On June 17, 2010, Pesce found that as a result of the 2008 collision the plaintiff had a "thoracolumbar strain and also lumbosacral disc protrusion. . . . While she does have some radicular symptoms, much of the symptoms appear to be primarily multiligamentous. She has been very limited in terms of her function because of pain. She has been tried on multiple modalities including injections and pharmacologic treatment with only mini-

mal relief. While I feel injections can continue to be helpful in providing some symptomatic relief and allow her to function at a more normal level, I feel she is plateaued with regards to any other formal treatment." Pesce opined that the plaintiff had a 12 percent permanent partial disability of the whole person as a result of the collision.

Thereafter, the plaintiff treated with Eric Grahling, a pain expert physician, who diagnosed the plaintiff with a herniated disc in the lumbar spine, facet joint syndrome, and thoracic spondylosis. Grahling concluded that the plaintiff had chronic muscle spasms in her back and that the condition was likely to " 'go on indefinitely . . . at least a decade, probably longer.' " He diagnosed the plaintiff with chronic facetogenic mid-back pain, intractable muscle spasm, and chronic low back pain likely due to herniated disc. Grahling gave the plaintiff thoracic and lumbar epidural steroid injections and anticipated that she would need such injections three to four times a year at the cost of $1200 to $1300 per thoracic injection and $1600 to $1700 per lumbar injection. Grahling gave the plaintiff a 6 percent permanent impairment of the thoracic spine. The plaintiff claims that she cannot lift objects weighing more than twenty-five pounds, cannot walk, sit or stand for long periods of time, and suffers from sleeplessness due to pain. She expressed concern about her ability to take care of the children she someday hopes to have and is fearful of her need for future medical treatment and its long-term effects. The plaintiff claims she can no longer ice skate nor engage in recreational activities as vigorously as she once had.

The jury also could have found that after the 2008 collision, despite her pain, the plaintiff continued to work part-time and completed her college education with honors. At the time of trial, she was employed full-time. She made no claim for lost wages nor loss of earning capacity. She has traveled by car to Ocean City, New Jersey, and by airplane to Disney World for vacations. She claimed that she was in intense pain during the two week trial, experiencing pain at a level of 6 or 7 out of 10 in her low back and 6 in her midback. The court stated that the plaintiff did not appear to be in any discomfort by body language or voice and appeared to be a healthy young woman. After setting forth the evidence, the court addressed each of the postverdict motions. We now address the plaintiff's claims on appeal.

I

The plaintiff first claims that the court abused its discretion by denying her motion for additur. We disagree.

The following facts are relevant to the plaintiff's claim. The jury awarded her $65,000 for past and future

medical expenses and $12,000 in noneconomic damages for a total award of $77,000. On February 15, 2013, the plaintiff filed a motion for additur in which she claimed that she had presented evidence of $62,920.52 in medical bills for medical treatment she received as a result of the 2008 collision and that the jury awarded her only one half of that sum "for no reason at all."[3] Moreover, she claimed that she had established that she will incur $112,000 for future medical treatment but that the jury had awarded her only $65,000 "without any basis." She further claimed that she had established that her past and future medical treatment was reasonably necessary and that there was no reasonable evidence to the contrary. The plaintiff sought to have the court add $109,920.52 to the economic portion of the jury's verdict.

With respect to the jury's noneconomic damages award of $12,000, the plaintiff claimed that the jury failed to consider evidence of her past pain and suffering, her loss of the enjoyment of life's activities, her fear of future medical care, and difficulty bearing children, and that she will live with daily pain for the remainder of her life. Again, she claimed that there was no evidence to the contrary. She asked the court to increase the jury's noneconomic damages award "by a sum of $238,000."

We review the trial court's decision to deny a motion for additur under an abuse of discretion standard. *Ng* v. *Wal-Mart Stores, Inc.*, 122 Conn. App. 533, 536, 998 A.2d 1214 (2010). "[I]t is the court's duty to set aside the verdict when it finds that it does manifest injustice, and is . . . palpably against the evidence. . . . The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, mistake or corruption. . . . [A] court's decision to set aside a verdict and to order an additur . . . is entitled to great weight and every reasonable presumption should be given in favor of its correctness. . . . In determining whether the court abused its discretion, therefore, we decide only whether, on the evidence presented, the court reasonably could have decided that the jury did not fairly reach the verdict it did. To do so, we must examine the evidential basis of the verdict itself . . . ." (Internal quotation marks omitted.) *Silva* v. *Walgreen Co.*, 120 Conn. App. 544, 550–51, 992 A.2d 1190 (2010).

In its memorandum of decision, the court set forth its full jury instructions on the subject of damages, including economic and noneconomic damages. The court then denied the plaintiff's motion for additur stating: "In this case, the fact that the jury awarded less than the full amount requested was not evidence of

error; rather, it shows that the jury carefully evaluated the evidence. With regard to past and future medical bills, [it] only awarded those expenses that [it] found to be reasonably necessary and proximately caused by the . . . underinsured motorist's negligence. With regard to noneconomic damages, there obviously is no mathematical formula to precisely measure the value of such losses. The jury adhered to the court's instruction to use [its] own good judgment in awarding damages in that category. The variance between the plaintiff's request and [its] awards reflected [its] acceptance of the defendant's litigation theme, that this plaintiff was certainly injured in this accident, and she has pain as a result, but that she unnecessarily pursued the most extensive and expensive treatment and exaggerated her claims on noneconomic damages for litigation purposes and/or that her condition was partly preexisting due to the 2007 automobile accident."

The plaintiff's argument on appeal rests on the faulty premise that a plaintiff is entitled to recover, dollar for dollar, expenses alleged to have been incurred due to a collision when the defendant concedes liability. This argument discounts the jury's fundamental role of evaluating damages claimed with a discerning eye. We have reviewed the evidentiary record and conclude that the court did not abuse its discretion in denying the plaintiff's motion for additur. The defendant presented evidence that called into question a number of allegations in the complaint: the seriousness of the 2008 collision; whether the plaintiff's complaints of back pain were the result of the 2007 or 2008 collisions, or both; and that the plaintiff had stopped skating prior to the 2008 collision; among other things. As the court found, the jury abided by its instructions and awarded damages that fell "within the necessarily uncertain limits of fair and reasonable compensation" in this particular case and do not shock our sense of justice. The plaintiff's claim as to additur, therefore, fails.

II

The plaintiff claims that the court abused its discretion with respect to several of its evidentiary rulings.[4] Specifically, the plaintiff claims that the court abused its discretion by (1) permitting the defendant to place her pediatric medical record into evidence, (2) failing to grant her motion to preclude evidence of or reference to the 2007 collision, (3) accommodating the schedule of one of the defendant's witnesses who testified prior to the conclusion of the plaintiff's case-in-chief, (4) permitting certain portions of deposition testimony to be read to the jury, and (5) admitting a report of the estimated damage to the Nissan. We reject all of the plaintiff's evidentiary claims.

We begin with the applicable standard of review. "The trial court's ruling on the admissibility of evidence is entitled to great deference." (Internal quotation marks

omitted.) *Jacobs* v. *General Electric Co.*, 275 Conn. 395, 406, 880 A.2d 151 (2005). Evidentiary rulings will be upset only for manifest abuse of discretion. Id.

A

The plaintiff claims that the court abused its discretion by admitting into evidence her complete medical file in Gooneratne's possession. We disagree.

The following additional facts are relevant to the plaintiff's claim. In preparation for trial, counsel for the defendant issued a subpoena duces tecum to the keeper of Gooneratne's records, which were delivered to the Superior Court clerk's office.[5] During the plaintiff's case-in-chief, Mattera testified about the treatment the plaintiff received from Gooneratne for skating injuries and the injury she sustained to her wrist in the 2007 collision, among other things. The plaintiff's counsel asked Mattera whether she had ever taken the plaintiff to Gooneratne for complaints related to her back. Mattera could not recall, and the following inquiry occurred:

"[The plaintiff's counsel]: Were there possibly complaints that she may have had with regards to injuries that you don't recall as you sit here today?

"[Mattera]: Yeah, I can't recall everything. Since she's been born?

"[The plaintiff's counsel]: If I show you Dr. Gooneratne's entire file, would that refresh your recollection with regard to all of the reasons why you ever brought [the plaintiff] to see Dr. Gooneratne?

"[Mattera]: Sure, yes."

After reviewing the entire file, Mattera testified that she had never taken the plaintiff to Gooneratne's office for a back or low back injury at any time from the date of her birth to the 2008 collision. She also testified that the plaintiff never had a problem with her lower or mid back prior to the 2008 collision. Thereafter, Gooneratne's records were marked as a full exhibit, and counsel for the plaintiff published them to the jury.

On cross-examination, counsel for the defendant questioned Mattera about her testimony that prior to February 28, 2008, the plaintiff never had any complaints of back pain and drew Mattera's attention to an acute visit form dated March 8, 2007, in Gooneratne's records. The form stated in part "CO neck and back pain."[6] That portion of the plaintiff's medical record was marked as an exhibit and published to the jury.

The plaintiff filed a motion to set the verdict aside, claiming in part that the court improperly allowed Gooneratne's records into evidence. The court denied the motion, stating that Mattera had reviewed the file during the plaintiff's direct examination of her and that the plaintiff had not objected to the file's being marked as a full exhibit. The court concluded that the plaintiff

had waived her claim of error.

On appeal, the plaintiff claims that the wholesale admission of her medical records in Goonerante's possession was improper and prejudicial because those records were not relevant or material to the issues at trial and violated her statutory right to privacy in the records. The defendant argues that the plaintiff waived her right to appellate review.

We agree that the plaintiff waived her right to appellate review. By asking Mattera to review Goonerante's medical records and publishing them to the jury after [it] were admitted into evidence, the plaintiff "opened the door" to further inquiry. See, e.g., *In re Jah'za G.*, 141 Conn. App. 15, 27 n.9, 60 A.3d 392 (claim that commissioner opened door to rebuttal testimony by introducing certain exhibit), cert. denied, 308 Conn. 926, 64 A.3d 329 (2013). "[O]rdinarily appellate review is not available to a party who follows one strategic path at trial and another on appeal, when the original strategy does not produce the desired result." (Internal quotation marks omitted.) *Glenn* v. *Glenn*, 133 Conn. App. 397, 403 n.6, 35 A.3d 376 (2012). The plaintiff's claim, therefore, fails.

B

The plaintiff claims that the court abused its discretion by failing to grant her motion to preclude evidence related to the 2007 collision, as such evidence was unduly prejudicial to the issue of damages in the present case. We disagree.

We review the trial court's ruling on a motion to preclude evidence pursuant to an abuse of discretion standard. See *Otwell* v. *Bulduc*, 76 Conn. App. 775, 777, 821 A.2d 793 (2003). Evidence is relevant if it has "any tendency to make the existence of any fact that is material to the determination of the proceeding more or less probable than it would be without the evidence." Conn. Code Evid. § 4-1.

On January 25, 2013, the plaintiff filed a motion to preclude any argument, evidence, testimony or reference in medical reports to the 2007 collision, claiming that reference to the 2007 collision was irrelevant, immaterial, and highly prejudicial as the only injuries she sustained in that collision were to her right hand and wrist. She stated that she had disclosed all of her medical records regarding the 2007 collision and that they contain no reference to pain in her cervical, thoracic, or lumbar spine. More particularly, the plaintiff sought to strike Grahling's testimony that dealt with the 2007 collision and a medical report from Aris D. Yannopoulos, an orthopedic surgeon, that refers to a prior collision that resulted in surgery. The court denied the motion.

After the jury returned its verdict, the plaintiff filed a motion to set aside the verdict, claiming, in part, that

the court improperly denied that motion to preclude. In ruling on the motion to set aside the verdict, the court stated, in part, that evidence regarding the plaintiff's 2007 collision was relevant to the issue of whether the 2008 collision was the cause of all of the injuries the plaintiff alleged in the present action. The court found that evidence of the injuries the plaintiff sustained in 2007 was relevant and not unduly prejudicial to her case.

On appeal, the plaintiff claims that the court abused its discretion because there was a factual error in Yannopoulos' report[7] and Grahling's testimony confused the jury, which caused the jury to reduce the economic damages she claimed by 50 percent. The defendant argues that the plaintiff placed the state of her health in issue by seeking compensation for the loss of the enjoyment of life's activities. In addition, the plaintiff's original complaint dated November 10, 2010, alleged that she suffered injuries that included a sprain/strain of the muscles and ligaments of her lumbar spine, cervical spine, thoracic spine, shoulder pain, and a L5-S1 central disc bulge.[8]

On the basis of our review of the record, including the plaintiff's original complaint, we conclude that the court did not abuse its discretion by denying the plaintiff's motion to preclude testimony related to the injuries she sustained in the 2007 collision. The plaintiff put her physical injuries and her inability to enjoy life's activities directly into issue by making certain allegations in her complaint. "Pleadings are intended to limit the issues to be decided at the trial of a case and [are] calculated to prevent surprise. . . . *Harris* v. *Shea*, 79 Conn. App. 840, 842–43, 832 A.2d 97 (2003); see also 71 C.J.S. 38, Pleading § 3 (2000) (purpose of pleadings is to frame, present, define, and narrow the issues, and to form the foundation of, and to limit, the proof to be submitted on the trial)." (Internal quotation marks omitted.) *Birchard* v. *New Britain*, 103 Conn. App. 79, 83, 927 A.2d 985, cert. denied, 284 Conn. 920, 933 A.2d 721 (2007).

Moreover, we conclude that the evidence regarding the 2007 collision and the injuries the plaintiff sustained as a result thereof did not unjustly prejudice her. The plaintiff suffered injuries in two motor vehicle collisions and the original complaint implicated injuries related to both collisions. It was for the jury to decide the proximate cause of her injuries. The trial court has discretion to determine that "the probative value of evidence is not outweighed by its prejudicial effect . . . ." (Internal quotation marks omitted.) *State* v. *Reynolds*, 152 Conn. App. 318, 325, 97 A.3d 989, cert. denied, 314 Conn. 934,    A.3d    (2014). "Evidence is prejudicial when it tends to have some adverse effect upon a [party] beyond tending to prove the fact or issue that justified its admission into evidence." (Internal quota-

tion marks omitted.) *State* v. *Orr*, 291 Conn. 642, 667–68, 969 A.2d 750 (2009). For the foregoing reasons, we conclude that the court did not abuse its discretion by denying the plaintiff's motion to preclude evidence related to the injuries she sustained in the 2007 collision.

C

The plaintiff claims that the court abused its discretion by permitting the defendant to present testimony regarding property damage to her vehicle from a person who was not disclosed as a witness prior to trial and by permitting that person to testify during the plaintiff's case-in-chief. We do not agree.

In ruling on the motion to set aside the verdict, the court addressed the point raised by the plaintiff that the court permitted Souza to testify about the damage to the Nissan the plaintiff was driving at the time of the 2008 collision. At trial, the plaintiff argued that the defendant had not disclosed Souza as a witness in its trial management memorandum and that Souza had not been disclosed to the jurors during voir dire to determine whether there were any conflicts. The plaintiff also argued "the allowance of this undisclosed witness on an undisclosed topic, at the time of trial when the witness was not a rebuttal witness rather was a witness for the defense, was highly prejudicial."

The court was not persuaded by the plaintiff's arguments because the plaintiff was late in disclosing information to the defendant regarding damage to the Nissan.[9] The court permitted the defendant to present Souza's testimony during the plaintiff's case due to Souza's bona fide scheduling conflict. The court also stated that, prior to Souza's testimony, the court asked the jury whether anyone knew her. No concerns were raised. Souza testified after Mattera finished her testimony. The court concluded that the plaintiff was not prejudiced by letting Souza testify prior to the conclusion of the plaintiff's case-in-chief.

In addition, the plaintiff claimed that the defendant commented on Souza's testimony during final argument. The court also found the plaintiff's claim was untimely because the plaintiff did not object to the defendant's closing argument.

On the basis of our review of the record, we conclude that the court did not abuse its discretion by permitting Souza to testify during the plaintiff's case-in-chief. The plaintiff failed to disclose information regarding the property damage to the Nissan in a timely fashion and objected to the evidence coming in as a business record. The information was relevant to the issues at trial. Given the defendant's late discovery of the information, it is not surprising that Souza's business schedule had to be accommodated for her to testify. The evidence was not prejudicial to the plaintiff in the sense that it came as a surprise. Mattera filed a claim for damages four months

after the 2008 collision. Souza inspected her vehicle and issued her a check for damages. There is no evidence that Mattera disputed the amount of the compensation she received for damage to the vehicle.

As to the plaintiff's claim that the jury was confused by permitting Souza to testify during her case, the defendant points out in its brief that the court not only permitted it to present testimony out of order, but the court also permitted the plaintiff to interrupt Mattera's testimony to present Pesce's testimony and the videotaped deposition of Grahling. It is within the discretion of the trial court to control the order of testimony. See *State v. McCall*, 187 Conn. 73, 84, 444 A.2d 896 (1982). The court did not abuse its discretion by permitting the defendant to present Souza's testimony during the plaintiff's case.

### D

The plaintiff claims that the court abused its discretion by permitting certain portions of Jeffrey Tompkins' deposition testimony to be read to the jury. We decline to review this claim.

In its memorandum of decision the court wrote: "The first issue raised by the plaintiff in support of her claim for a new trial is that 'the introduction of . . . Tompkins created a firestorm with regard to the defendant's defense.' The deposition of . . . Tompkins was read to the jury. He testified as to the extent of the damage to the tortfeasor's vehicle. He was called by the plaintiff. The plaintiff's claim on this point is unexplained and indiscernible. Therefore, no merit is found in it."

On appeal, the plaintiff claims that the court granted her motion to preclude certain portions of Tompkins' deposition testimony, but that testimony was read to the jury.[10] She did not claim before the trial court that the reading of Tompkins' deposition violated the court's ruling on her motion to preclude. This court repeatedly has held that it "will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *McGuire* v. *McGuire*, 102 Conn. App. 79, 87, 240 Conn. 924 A.2d 886 (2007). "To review a claim advanced for the first time on appeal and not raised before the trial court amounts to a trial by ambuscade of the trial judge." *Jalbert* v. *Mulligan*, 153 Conn. App. 124, 144, 101 A.3d 279, cert. denied, 315 Conn. 901,     A.3d (2014). The plaintiff's claim is not reviewable.

### E

The plaintiff's last evidentiary claim is that the court improperly permitted the defendant to place a copy of the defendant's report regarding an estimate of damage to the Nissan into evidence. We disagree.

In her motion to set aside the verdict, the plaintiff claimed that the court abused its discretion by permitting the report of estimated damage prepared by Souza into evidence. The plaintiff argued that the report was only an estimate and that Souza admitted that she did not bend down to inspect whether there was additional damage to the vehicle or whether repairs had been completed. The court denied the motion to set aside on that basis, stating that the report documented visible damage, estimated the cost to repair, and was made promptly after Progressive was notified and called to view the damage. The court found that the information was relevant to the issues of liability as to the cause of the particular damage the plaintiff claimed. Moreover, the court found that the plaintiff was able to demonstrate on cross-examination that the inspection was not thorough and that it took place four months after the 2008 collision, and concluded that those factors go to the weight of the evidence, not its admissibility.

We agree with the court's analysis and reasoning. The plaintiff put the extent of her injuries in question and the defendant sought to determine whether she had exaggerated the force of the 2008 collision. The report was admissible as to the extent of damage Souza observed. Evidence susceptible of different explanations goes to its weight, not to its admissibility. *State v. Evans*, 44 Conn. App. 307, 314, 689 A.2d 494, cert. denied, 240 Conn. 924, 692 A.2d 819 (1997). The plaintiff cross-examined Souza as to the limitations of her inspection. As to the plaintiff's complaint that the inspection took place months after the 2008 collision, that is due to the fact that Mattera did not file a claim for damage until four months after the accident.

The plaintiff claims that the evidence was prejudicial because she was unaware that Souza was going to testify or what her testimony would be. Although the plaintiff may not have known in advance of trial that Souza would testify, she certainly was aware of Souza's inspection and that Tom Bligh had repaired some of the damage prior to the inspection. If the plaintiff thought the full extent of damage to the vehicle was important, she could have called Tom Bligh during her case-in-chief. She also could have called him in rebuttal.

For all of the foregoing reasons, the plaintiff's evidentiary claims fail.[11]

### III

The plaintiff's last claim is that the court improperly sustained the defendant's objection to a statement made by the plaintiff's counsel during final argument. We do not agree.

Counsel for the parties presented their final arguments on February 5, 2013. The transcript reveals the following colloquy at the beginning of final argument from the plaintiff's counsel.

"[The plaintiff's counsel]: And we now turn to the issues in this case. What is the plaintiff's injuries resulting from this accident? I'm going to start out with the defendant's opening statement, [counsel for the defendant]. We get to occasionally have the court reporter transcribe things. And I've asked for [counsel for the defendant's] opening statement. I'm going to read to you one sentence that [he] said in the last opening statement: 'And you'll have to ask yourselves whether or not all of the plaintiff's treatment is medically necessary in this case, that's for you to decide, and the issue becomes this, if you have a car accident, you're driving a Ford Taurus, you can't then go ask your insurance company and tell them you're driving a Rolls Royce.' Now when I heard that, I was offended because . . . .

"[The defendant's counsel]: Your Honor, I object to plaintiff's counsel talking about his offense to my opening remarks. I think that's commenting on—that's improper comment on the arguments of counsel.

"The Court: Well, I suppose it's not relevant, the personal feelings of counsel. Sustained."

In her motion to set aside the verdict, the plaintiff claimed that the court improperly sustained the defendant's objection to the personal opinions of the plaintiff's counsel, who was offended by the analogy comparing the plaintiff's personal injuries to property damage. Moreover, she stated that "[t]his was an admonishment in front of the jury that was highly prejudicial to [her], improperly and inappropriately supported by the court." The court ruled on the claim stating that it properly sustained the "defendant's objection [without admonition] to the plaintiff's counsel's remarks during closing argument that he was personally offended by the defendant's counsel's opening statement. . . . Counsel's expression of his personal opinions was improper." Personal attacks on the parties and opposing counsel are improper. See, e.g., *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 687 n.33, 657 A.2d 1087 (1995).

On appeal, the plaintiff notes that our Rules of Professional Conduct proscribe counsel from expressing personal opinions with respect to the evidence, citing *State* v. *Singh*, 259 Conn. 693, 702, 793 A.2d 226 (2002). She argues that the court should set aside the verdict if counsel makes a statement without an evidentiary basis. See *Fonck* v. *Stratford*, 24 Conn. App. 1, 3, 584 A.2d 1198 (1991). The plaintiff is correct as to the applicable Rule of Professional Conduct, but she has misapplied it in this circumstance. In his opening statement, counsel for the defendant drew an analogy consistent with the defendant's theory of the case, as found by the court. That is that the plaintiff was injured in the 2008 collision, but that she unnecessarily pursued the

most extensive and expensive treatment and exaggerated her claims for economic gain. See part I of this opinion. We recognize that a person who has suffered personal injuries in a motor vehicle accident most likely would not like to be compared with damage to a car,[12] but counsel for the defendant was attempting to provide the jury with a concrete example of the theory of defense; it was appropriate argument, not a statement of personal opinion. The court, therefore, properly sustained the objection of the defendant's counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In several of her claims, the plaintiff states that the verdict should be set aside or that she should be granted a new trial because the court abused its discretion with regard to numerous specific evidentiary rulings. The substance of the plaintiff's claims is that the court's evidentiary rulings were improper. We therefore have reviewed all such claims pursuant to the abuse of discretion standard. In each instance of claimed error, we conclude that the court did not abuse its discretion. We, therefore, need not consider whether the plaintiff was prejudiced by the court's rulings; see *Jacobs* v. *General Electric Co.*, 275 Conn. 395, 406, 880 A.2d 151 (2005) (evidentiary rulings overturned on appeal only by showing of substantial prejudice or injustice); and whether the court improperly denied the plaintiff's motion to set aside the verdict. See *Purzycki* v. *Fairfield*, 44 Conn. App. 359, 362, 689 A.2d 504 (1997) (court may set aside verdict if against law and evidence), reversed on other grounds, 244 Conn. 101, 708 A.2d 937 (1998).

[2] Progressive Insurance Company (Progressive) insured the tortfeasor's vehicle.

[3] Attached to the verdict form was a document containing four columns with the headings: name of the medical provider, dates of service, amount of charge, and amount awarded. The data in the first three columns were typewritten. The amount awarded is handwritten and equal to one-half of the amount of each charge.

[4] See footnote 1 of this opinion.

[5] The plaintiff's counsel did not disclose Gooneratne's records prior to trial.

[6] At the bottom of the form is a hand-written note that states: "Tcall 3/9/07 c/o severe back & neck pain. Tylenol w codeine #3 PRN for pain."

[7] The record is inadequate for this court to consider the plaintiff's claim that there is an error in Yannopoulos' report. The plaintiff has failed to indicate where in the record she objected to the report on the basis of the claimed error at the time it was admitted into evidence or that she brought the claimed error to the attention of the jury.

[8] During trial, on January 31, 2013, the plaintiff filed an amended complaint in which she omitted some of the injuries she alleged in her original complaint. The amended complaint alleged, in relevant part, that as a result of the subject collision she suffered a sprain/strain of the muscles and ligaments of her lumbar and thoracic spine and a central disc herniation at L5-S1.

[9] The plaintiff took the deposition of Jeffrey Tompkins, an adjuster for Progressive, on January 28, 2013. During the course of the deposition, counsel for the defendant became aware of documents in Progressive's file that had not been disclosed.

[10] In her brief, the plaintiff failed to identify what portion of Tompkins' deposition testimony was read to the jury that violated the court's order or to identify where in the transcript the evidence could be found. In its brief, the defendant claimed that the court restricted its cross-examination of Tompkins to those matters the court found relevant and material. The deposition was redacted in accordance with the court's order, according to the defendant. The plaintiff did not object at the time of trial and therefore did not preserve the claim for appellate review.

[11] In her brief, the plaintiff claims prejudice because her counsel interviewed some jurors who explained that Mattera testified that Tom Bligh had fixed some of the damage to the Nissan and that was the reason the vehicle showed little damage when Souza inspected it. The plaintiff's counsel represented that the jurors questioned why Tom Bligh was not called to testify. The plaintiff speculates as to whether the jury considered evidence that was not before it. The record is inadequate to review this claim.

[12] The plaintiff's counsel did not object to the "offensive analogy" at the time it was made in the opening statement.